**Commonwealth ex rel. v. Seip**

*Martin H. Lock*, Assistant District Attorney, and *Huetté F. Dowling*, for defendant.

*Etter N. Houser*, plaintiff, p. p.

NEELY, J., May 23, 1955.—In this habeas corpus proceeding, the relator, Etter N. Houser, contests the validity of an extradition warrant issued by the Governor of Pennsylvania ordering his surrender to the authorities of the State of New Jersey to answer a criminal charge of willful neglect. The Governor's warrant was served upon the relator in the Dauphin County Prison where he is serving a sentence at no. 18, September sessions, Oyer and Terminer, 1954, on a conviction of burglary in this court.[1] The court had ordered that the relator-defendant be paroled effective April 25, 1955. This parole was revoked on that date because of the pending extradition proceeding.

The accused-relator was brought before the court on April 25, 1955, and was informed of the demand for his extradition made by the State of New Jersey on the charge of willful neglect and of his right to counsel. He at that time informed the court of his desire to present a petition for a writ of habeas corpus. In order to give him a full opportunity to assert his rights, we fixed an additional hearing for May 9, 1955, and advised the accused that in the meantime

---

[1] The sentence in this case was imposed on March 23, 1955, for a period of not less than seven nor more than 23 months, to be computed from August 25, 1954.

he was entitled to present his petition and that the court would expect the petition to be filed on or before the date for the continued hearing. The petition was filed on May 7, 1955, in propria persona and the continued hearing was held on the date fixed.

The requisition papers from the demanding State are in order, as they are required to be: Commonwealth ex rel. v. Baldi, 372 Pa. 463, 466 (1953); and charge the defendant in Camden County, N. J., with the willful neglect of his two minor children, Florence and John Houser, in destitute and necessitous circumstances.

The right of the accused to challenge the validity of the extradition proceedings by habeas corpus is expressly accorded him by sec. 10 of the Uniform Criminal Extradition Act of July 8, 1941, P. L. 288, 19 PS §191.10. "That right has been always recognized by our courts": Commonwealth ex rel. v. Heinz, 141 Pa. Superior Ct. 158, 160 (1940). See also Commonwealth ex rel. v. Hare, 36 Pa. Superior Ct. 125 (1908); Commonwealth ex rel. v. Philadelphia Prison Superintendent, 162 Pa. Superior Ct. 459, 460 (1948); Commonwealth ex rel. v. Dye, 373 Pa. 508 (1953).

In Commonwealth ex rel. v. Heinz, supra, at page 162, the Superior Court said:

"The governor's warrant is presumptive, but not conclusive evidence of every fact essential to its validity, as the facts may by competent evidence be shown to be false. It may be attacked as void on its face or by establishing that the jurisdictional facts necessary to its issuance do not exist. . . . Whether the accused is charged on the face of the extradition papers with the crime is a jurisdictional question which is open to judicial inquiry and review: 22 Am. Jur., Extradition, §54.

"If the accused successfully contradicts jurisdictional facts, he is entitled to discharge from custody."

On the face of the extradition papers, the accused-relator is clearly charged here with the commission in New Jersey of the crime of willful neglect of his two children. The accused contests the jurisdictional facts, and our question is whether he has done so successfully and is entitled to have the court sustain his petition for a writ of habeas corpus and order his discharge in the extradition proceedings.

Mary Houser, the wife of the accused, testified that her husband abandoned her in Baltimore, Md., when her child Florence was four months old. She moved to New Jersey and her son John was born there. She testified that both are the children of the relator. According to the testimony, the relator never lived in New Jersey. However, the relator himself said that he had been in New Jersey on "numerous occasions" and visited the prosecutor's office in Camden.

The general rule, of course, under the Uniform Criminal Extradition Act of 1941 is that in order to sustain the requisition of another State for extradition from Pennsylvania of a fugitive from justice, it is necessary that the subject of extradition (a) is charged with the commission of a crime in the demanding State; (b) was present in the demanding State at the time of the commission of the crime charged; (c) is a fugitive from the demanding State, and (d) it must be shown also that the requisition papers are in order: Commonwealth ex rel. v. Baldi, supra. These requirements are imposed under section 3, 19 PS §191.3, of the Uniform Criminal Extradition Act. The requirements are to some extent modified by the provisions of section 6 of that Act, 19 PS §191.6, which section relates to extradition of persons not present in the demanding State at the time of the commission of the crime and who have not actually fled therefrom.

However, neither section 3 nor section 6 of the Uniform Criminal Extradition Act of 1941 applies in this case. The applicable statute here is the Uniform Enforcement of Support Law, Act of May 10, 1951, P. L. 279, as amended, 62 PS §2043.1. Whether the accused can be extradited in this case depends upon the meaning of that law and its application in the instant case.

The Act of 1951 relating to criminal nonsupport makes two important departures from the Uniform Criminal Extradition Law, in that it is not necessary under the Act of 1951 to show (a) that the accused was in the demanding State at the time of the commission of the crime, or (b) that he has fled therefrom. It remains, of course, necessary under the Act of 1951 to show the commission of the crime of nonsupport in the demanding State.

The Pennsylvania Act of 1951 provides that the duties of support which are enforceable under that statute are those imposed by another "State . . . in which this or a substantially similar reciprocal law has been enacted": 62 PS §2043.2. We can take judicial notice that New Jersey has adopted the Uniform Enforcement of Support Law (which was sponsored by the National Conference of Commissioners on Uniform Laws and by the American Bar Association) in substantially the same form as adopted in Pennsylvania (see Uniform Laws Annotated, 9A Pkt. Parts, page 66 et seq.) ; as we can also take note of those statutes enacted in the State of New Jersey that are pertinent to the disposition of this case. See Uniform Judicial Notice of Foreign Law, Act of May 4, 1939, P. L. 42, 28 PS §291.

The Uniform Enforcement of Support Law, as adopted in Pennsylvania, in article II provides for criminal enforcement by extradition, and in article III makes provision for civil enforcement of the husband's duty to support. In Commonwealth v. Shaffer,

175 Pa. Superior Ct. 100 (1954), the Superior Court discusses the provisions of the Act of 1951. As to civil support, the court in its opinion by Judge Hirt said at page 108:

". . . The Civil Enforcement section of the Pennsylvania Act comprehends within its purview, proceedings for support as though brought under §733 of the Act of June 24, 1939, supra, 18 PS §4733, which in substance is a reënactment of the Act of April 13, 1867, P. L. 78. This is the common procedure in the quarter sessions for enforcing the duty of support. Such action is essentially a civil proceeding although brought under the sanction of the Criminal Code. The purpose of the proceedings is not to punish the defendant for his dereliction in failing to support his family but to secure such allowance for their support as is reasonable having in view his ability to pay as evidenced by his property, his income and his earning capacity. Commonwealth v. Shankel, 144 Pa. Superior Ct. 476, 19 A. 2d 493; Com. ex rel. Binney v. Binney, 146 Pa. Superior Ct. 374, 22 A. 2d 598."

Willful desertion or nonsupport (section 731) and neglect to support a bastard (section 732 of the Penal Code of June 24, 1939, P. L. 872, 18 PS §§4731, 4732) are misdemeanors and come within the purview of article II relating to criminal enforcement. In commenting upon the meaning of this article, Judge Hirt, inter alia, said at page 105:

"Article II of the Pennsylvania Act provides for Criminal Enforcement specifically by extending the remedy of extradition of one charged 'with the crime of failing to provide for the support of any person,' . . . Violations of §731 and §732 of our Penal Code (1939) . . . . come within the purview of Article II."

The accused-relator here stands charged with willful neglect under the New Jersey statute. The perti-

nent provision of the New Jersey statutes, chapter 100, §2A:100-2 reads as follows:

"2A:100-2. DESERTION OR NONSUPPORT OF WIFE OR CHILDREN IN DESTITUTE OR NECESSITOUS CIRCUMSTANCES. Any husband who deserts or willfully neglects or refuses to provide for the support and maintenance of his wife, in destitute or necessitous circumstances, or a parent who deserts or willfully neglects or refuses to provide for the support and maintenance of his or her minor child or children, in destitute or necessitous circumstances, is guilty of a misdemeanor. If a fine be imposed, the court may direct the same to be paid in whole or in part to the wife or to the guardian, custodian or trustee of said minor child or children."

It is to be observed, therefore, that the relator here is indicted in New Jersey for the commission of a crime which is substantially the same as the misdemeanor defined in section 731 of our code. The crimes are misdemeanors in both the New Jersey and Pennsylvania statutes.

Article II of the Act of 1951, sec. 5, 62 PS §2043.5, provides:

"The Governor of this State, (1) may demand from the governor of any other state, the surrender of any person found in such other state who is charged in this State with the crime of failing to provide for the support of any person in this State; and, (2) may surrender, on demand by the governor of any other state, any person found in this State who is charged in such other state with the crime of failing to provide for the support of a person in such other state. The provisions for extradition of criminals, not inconsistent herewith, shall apply to any such demand, although the person whose surrender is demanded was not in the demanding state at the time of the commission of the crime and although he had not fled therefrom.

Neither the demand, the oath, nor any proceedings for extradition pursuant to this section, need state or show that the person whose surrender is demanded has fled from justice, or at the time of the commission of the crime was in the demanding or the other state."

Under this section, if the accused is within this State and has committed the crime of willful neglect of children in destitute or necessitous circumstances in the State of New Jersey, as defined in the New Jersey statute, he would come within the purview of section 5 of the Act of 1951, even though he had not fled from the State of New Jersey. If he is here and had committed the crime in New Jersey, he is extraditable, and in our judgment the crime would be committed in New Jersey if the children were there and they had been willfully neglected there by the relator and left destitute, as charged in the indictment.

Notwithstanding the fact that the abandonment occurred in Baltimore, Md., according to the wife's testimony, it would be for the New Jersey courts to say whether that abandonment was persisted in so as to render the accused guilty of willful neglect of his children in New Jersey. The guilt or innocence of the accused is not to be determined in an extradition proceeding: Commonwealth ex rel. v. Superintendent of County Prison, 152 Pa. Superior Ct. 167, 172 (1943); Commonwealth ex rel. v. Baldi, 166 Pa. Superior Ct. 321, 324 (1950), certiorari denied, 339 U. S. 986 (1950).

The accused by his own admission was in New Jersey on "numerous occasions" after the abandonment in Maryland, and visited the prosecutor's office in Camden in connection with his existing marital difficulties. It would be for the courts in New Jersey to determine how these facts would bear upon the question of the accused's guilt or innocence of willful neglect as charged in the New Jersey indictment.

It appearing that the requisition papers are in order, and no facts having been introduced into this record contradicting the jurisdiction of New Jersey, we conclude, therefore, that the Governor's warrant for the extradition of the relator should be executed. Hence, the relator's petition for a writ of habeas corpus must be dismissed and the writ denied.

The relator is now in the Dauphin County Prison serving the sentence on his conviction of the charge of burglary. The Governor had discretionary power under section 19 of the Uniform Extradition Act of 1941, 19 PS §191.19, either to grant forthwith New Jersey's application for extradition of the accused, or defer action until the accused was completely punished by serving his sentence: Commonwealth ex rel. v. Burke, 162 Pa. Superior Ct. 592, 597 (1948). The Governor of our Commonwealth, in the exercise of his discretion, has granted the application for immediate extradition, and therefore under our order disposing of the relator's petition for writ of habeas corpus the said relator will accordingly be subject to extradition.

We indicated at the hearing on May 9, 1955, that we felt plaintiff's petition for writ of habeas corpus should be dismissed and the relator extradited, although we did not enter a final order to that effect. The relator at this hearing stated that it is his desire to appeal from any order of this court permitting extradition. Since we are herein entering such an order, a detainer should be lodged with the warden of the Dauphin County Prison to be effective until relator has had an opportunity according to law to protect his rights of appeal by applying for an order of supersedeas in the appellate court.

### Order

And now, May 23, 1955, the relator's petition for writ of habeas corpus is dismissed, the writ is denied,

and the relator is remanded into the custody of John C. Seip, warden of the Dauphin County Prison, who is hereby authorized and directed in accordance with this opinion to turn over the prisoner, Etter N. Houser, to the proper authorities of the State of New Jersey when the same present themselves.