Commonwealth ex rel. Henderson, Appellant, *v.* Baldi.

464

Argued November 24, 1952. Before STERN, C. J., STEARNE, JONES, BELL and CHIDSEY, JJ.

*Lewis Tanner Moore,* with him *James C. Lightfoot,* for appellant.

*Malcolm Berkowitz,* Assistant District Attorney, with him *Samuel Dash,* Assistant District Attorney, *Michael von Moschzisker,* First Assistant District Attorney, *James W. Tracey, Jr.,* Deputy Assistant Attorney General for State of Georgia and *Richardson Dilworth,* District Attorney, for appellee.

OPINION BY MR. JUSTICE JONES, January 5, 1953:

This appeal is from a final order of a judge of the Court of Common Pleas No. 7 of Philadelphia County denying the relator's petition for a writ of habeas corpus. Apparently the proceeding below was mistakenly pursued for a time in the Court of Quarter Sessions. However, it appears that the rule on the petition was granted and the matter heard and disposed of by a judge of the Court of Common Pleas. We shall accordingly treat with the appeal on its merits the same as if the proceeding had been regularly docketed in the Court of Common Pleas as it originally should have been: see Act of May 25, 1951, P. L. 415, 12 PS §§1901, 1907. The application for the writ was intended to avoid the extradition of the relator. The case, therefore, falls within the description, "all other cases", in Section 7 of the Act of 1951, supra, and the appeal properly lies to this court.

The relator is a fugitive convict from the State of Georgia where he is under a life sentence imposed following his conviction of murder upon his plea of guilty. After he had served less than a year of the sentence, he escaped and fled the State. He was apprehended in Philadelphia on October 11, 1951, where he was lodged in the Moyamensing County Prison as a fugitive from justice. In due course his extradition to Georgia was requested by the Governor of that State and on November 7, 1951, the Governor of Pennsylvania, by order formally entered, honored the request. The relator thereupon filed his petition in the court below for a writ of habeas corpus alleging that if he was returned to Georgia, he would be subjected to cruel and unusual punishment in violation of constitutional prohibitions. After a full hearing on the merits, the court below, concluding that ". . . there is no substance whatever in relator's alleged fear that

he will suffer cruel and inhuman punishment if he is returned to Georgia," denied the petition. It is that finding and the court's exclusion of certain testimony offered at the hearing, concerning alleged cruel and inhuman punishment of prisoners in Georgia, which constitute the appellant's present assignments of error.

It is unnecessary, however, for us to consider the errors alleged. None of them charges any irregularity in the extradition proceedings and that is all that can presently concern us. Under the Uniform Criminal Extradition Act of July 8, 1941, P. L. 288, 19 PS §191 et seq., the extent of the proof required to sustain a State's requisition of another State for the extradition therefrom of a fugitive from justice is that the subject of the extradition is charged with a crime in the demanding State, that he was present in the demanding State at the time of the commission of the crime charged, that he is a fugitive from the demanding State and that the requisition papers are in order: see *Commonwealth ex rel. Katz v. Philadelphia Prison Superintendent,* 162 Pa. Superior Ct. 459, 460, 58 A. 2d 366. All that the present appellant avers in support of his petition for a writ of habeas corpus is that, if he is returned to Georgia, he will be subjected to cruel and unusual punishment. He does not in any way impeach the extradition proceedings nor has he controverted a single one of the facts upon which the requisition papers are based.

The underlying legal question here involved has recently been squarely ruled by the Supreme Court of the United States in *Sweeney v. Woodall,* 344 U.S. 86 (handed down November 17, 1952). In that case, Woodall, a fugitive convict from Alabama, upon being apprehended in Ohio, petitioned a court of the asylum for a writ of habeas corpus alleging, as does the present appellant, that, if he were returned to the demand-

ing State, he would be subjected to cruel and unusual punishment in violation of the Constitution of the United States. The ensuing litigation is highly illuminating on the question of the interference by courts of the asylum with an extradition instituted upon the requisition of the Governor of the State from which the subject is a fugitive. The Ohio court of first instance (Common Pleas) refused to hear the petition on its merits and denied it. This judgment was successively affirmed by an intermediate appellate court (88 Ohio App. 202) and by the State's court of last resort (152 Ohio St. 368); and the Supreme Court of the United States denied certiorari: 339 U. S. 945.

The prisoner then petitioned the District Court of the United States for the Northern District of Ohio for his release upon habeas corpus for the same reasons theretofore advanced by him in the State's courts. The District Court denied the petition without hearing any evidence, but the Court of Appeals for the Sixth Circuit reversed and remanded the cause for a hearing on the merits. The Supreme Court granted certiorari and, in reversing, spelled out the procedure to be pursued by a fugitive convict in order to test the constitutionality of the punishment allegedly to be inflicted upon him under the penal system of the State of his servitude saying that,—"Considerations fundamental to our federal system require that the prisoner test the claimed unconstitutionality of his treatment by Alabama in the courts of that State. Respondent [prisoner] should be required to initiate his suit in the courts of Alabama, where all parties may be heard, where all pertinent testimony will be readily available and where suitable relief, if any is necessary, may be fashioned." The obvious justification for the course thus prescribed lay in the fact that "The scheme of interstate rendition . . . contemplates the prompt

return of a fugitive from justice as soon as the state from which he fled demands him; these provisions do not contemplate an appearance by [the demanding State] in respondent's asylum to defend against the claimed abuses of its prison system."

It follows that the order denying the writ must be affirmed.