## Cooper, Appellant, v. McDermott.

Argued January 13, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Michael von Moschzisker,* with him *Fred Cohen,* and *John Rogers Carroll,* for appellants.

*Thomas A. Masterson,* Deputy City Solicitor, with him *Anthony J. Ryan* and *John M. McNally, Jr.,* Assistant City Solicitors, and *David Berger,* City Solicitor, for appellee.

OPINION BY MR. JUSTICE EAGEN, March 22, 1960:

Six of the appellants, citizens of the State of California, stand indicted in the Court of Quarter Sessions of Philadelphia County, charged with the violation of, or conspiracy to violate, Section 524 of the Act of June 24, 1939, P. L. 872, as amended by the Act of July 17, 1957, P. L. 972, 18 PS §4524. Specifically, the indictment containing two counts charges that the defendants "feloniously did distribute, exhibit and give away a quantity and quantities of certain obscene literature consisting of writing, printed matter, pictures, images, drawings, figures, photographs and other pictorial representations, which are unrelated to science, art and scientific studies, and which when taken as a whole are indecent, lewd, lascivious and have the effect of inciting to lewdness or sexual crime, and certain lewd, lascivious, filthy, indecent and disgusting pamphlets, story papers, papers, writings, drawings, photographs, figures and images, and certain written and printed matter of an indecent character", and that the defendants "feloniously did write, print, publish and utter, or did cause to be printed, published and uttered a quantity

of advertisements and notices giving information, directly or indirectly, stating or purporting to do so, where, how, of whom, or by what means certain, or what purported to be, a quantity and quantities of obscene, lewd, lascivious, filthy, disgusting and indecent pictures, writings, papers, figures, images, matter, articles, and other obscene literature could be purchased, obtained or had.". This statute in substance renders it a crime feloniously to write, print, publish, distribute or exhibit, etc., obscene literature of the printed, picture or photograph type, which is unrelated to science, art or scientific study and which, when taken as whole, is indecent, lewd, lascivious and has the effect of inciting to lewdness or sexual crime.

Pursuant to the indictments and at the request of the District Attorney of Philadelphia County, the Governor of Pennsylvania issued warrants of extradition commanding that the defendants be taken into custody and returned to Philadelphia County for the purposes of trial.

This appeal involves three separate complaints in equity (in two actions the six individuals charged with the criminal violations involved are plaintiffs and in the other action three taxpayers, residents and citizens of the City of Philadelphia, appear as plaintiffs), which seek to enjoin the defendant, the Chief of County Detectives in the office of the District Attorney of Philadelphia County, from taking any action in furtherance of the execution of the extradition warrants.

It is charged that the statute of 1939, supra, upon which the criminal charges are based is vague and on its face unconstitutional and is in violation of the Fourteenth Amendment to the Constitution of the United States and of Article I, Sections 7 and 9 of the Pennsylvania Constitution. It is also argued that the act of the Governor of Pennsylvania in authorizing extradition is void, arbitrary, unreasonable and without

legal warrant and that a waste of tax funds will result if further prosecution ensues.

All actions were consolidated for the purposes of disposition and the court below denied injunctive relief and dismissed the request for a preliminary injunction. An appeal to this Court followed.

Equity has no jurisdiction under the circumstances presented. As a general rule, the office and jurisdiction of a court of equity, unless enlarged by statute, are limited to the protection of the rights of property and do not invade the domain of the courts of the common law. Equity's jurisdiction does not involve control of the prosecution, punishment and pardon of crimes or misdemeanors: *In re Sawyer et al.*, 124 U. S. 200 (1888); *Douglas v. City of Jeannette*, 319 U. S. 157 (1943). These important functions, for most compelling reasons and sound public policy, are performed exclusively in courts exercising criminal jurisdiction: *Meadville Park Theatre Corporation v. Mook et al.*, 337 Pa. 21, 10 A. 2d 437 (1940). As stated in that opinion, page 24: "Only confusion and frustration in the enforcement of these laws would result if a person arrested or about to be arrested for their violation could by transforming himself into a complainant and a district attorney into a defendant, in civil proceedings, have his guilt or innocence adjudicated by a *court of equity.*"

While there have been rare and unusual instances wherein courts of equity have enjoined public officers from proceeding with the enforcement of penal statutes, in those cases the validity of the statutes under which the proceedings had begun was seriously and substantially challenged *and, in addition,* it was clearly apparent that irreparable damage and harm would be done to property by a continuation of the prosecution. Both of these elements are indispensable: *Martin v. Baldy,* 249 Pa. 253, 94 A. 1091 (1915); *M. & S. Ry. and L. Co.*

*v. New Castle*, 233 Pa. 413, 82 A. 501 (1912) ; *Terrace v. Thompson*, 263 U. S. 197 (1923) ; *Truax and the Attorney General of Arizona v. Raich*, 239 U. S. 33 (1915). As stated in *Cavanaugh et al. v. Looney, Attorney General of Texas*, 248 U. S. 453, 456 (1919) : "No such injunction 'ought to be granted unless in a case reasonably free from doubt;' and when necessary to prevent great and irreparable injury."

In this instance the only resulting harm to the individuals under indictment will be the inconvenience, personal expense and embarrassment incident to the extradition and prosecution. This follows from and is entirely due to acts of their own making and is in no way attributable to any act or wish of the Commonwealth or the people it represents. Such vexation will not cause equity to intervene: *Long et al. v. Metzger et al.*, 301 Pa. 449, 152 A. 572 (1930).

These defendants are free to litigate the question of the unconstitutionality of the statute through orderly methods of criminal procedure and thereby to enjoy a complete and adequate remedy at law.

As to the complaining taxpayers, the harm feared is infinitesimal and is not the "irreparable injury" to a property right that the law contemplates as worthy of equitable intervention in criminal prosecutions by duly constituted public officials. If courts were to adopt the policy advocated by these appellants, the cost of criminal enforcement would be greatly increased to all taxpayers.

Appellants also contend that the Uniform Criminal Extradition Act adopted in Pennsylvania July 8, 1941, P. L. 288 (19 PS §191.1 et seq.) and adopted in the State of California August 8, 1937, P. L. 1582, is the exclusive legal authority for the issuance of the extradition warrants and that such action is legally warranted only when the one charged *has fled* from justice and is

found in another state. We read no such intention on the part of the Legislature in this statute. Sections 6 and 23 would seem clearly to indicate the contrary and to provide for extradition of persons whose acts in the asylum state result in the commission of crimes in the demanding state. If the defendants are fugitives, the extradition is mandatory; if they are not fugitives the extradition is discretionary. In *Ex Parte Morgan*, 86 Cal. App. 2d 217, 194 P. 2d 800 (1948), the court quoting from *Cassis v. Fair*, 126 W. Va. 557, 29 S.E. 2d 245 (1944), at page 248 stated: " 'No reason in law, expediency or comity has been suggested why extradition should be limited to those who were physically in the state at the time the crime was committed. Many crimes may be committed in a state while the culprit remains without its borders. This is particularly true where such offender acts through an agent or a conspirator.' "

It is to be noted also that both in *Ex Parte Morgan* and in *Cassis v. Fair*, supra, it was strongly urged that the provisions of the Uniform Extradition Act in regard to the extradition of those accused of crime, who were not in the demanding state at the time of its commission and who, therefore, had not fled therefrom, are unconstitutional and in violation of the laws of the United States. This contention was rejected therein, as it has been consistently so when raised in other jurisdictions: *Ennist v. Baden*, 158 Fla. 141, 28 So. 2d 160; *English v. Matowitz*, 148 Ohio St. 39, 72 N.E. 2d 898; *In Re Campbell v. Murray*, 147 Neb. 820, 25 N.W. 2d 419; and, *Culbertson v. Sweeney*, 70 Ohio App. 344, 44 N.E. 2d 807.

The order of the lower court is affirmed at the appellants' costs.

Mr. Justice Bok dissents.

DISSENTING OPINION BY MR. JUSTICE BELL:

It is with great regret that I feel compelled to dissent. Six citizens of California were indicted in Philadelphia County for conspiracy to violate Section 524 of The Penal Code of Pennsylvania—exhibiting in Philadelphia obscene vile literature which they sent from California through the mails. If they are guilty of the crime charged, they should certainly be swiftly and commensurately punished in the proper criminal court.

We have taken an oath to obey, support and defend the Constitution. Constitutionally guaranteed rights must be safeguarded and sustained, even though sometimes a murderer or felonious criminal thereby escapes his just punishment. Fortunately, no such result will occur in this case, because these six complainants can be indicted, tried, and if guilty, convicted in California, and in a Federal Court for these same offenses.

The question here involved is whether a Court of Equity can enjoin the extradition of these complainants from California to Philadelphia County for trial here.

It is conceded (a) that said complainants were not in Pennsylvania, the demanding State, at or about the date of the commission of the crime (or at any other time), and (b) that they have never fled from Pennsylvania. These are indispensable prerequisites to extradition proceedings where a State Criminal Statute has been allegedly violated. In *Commonwealth ex. rel. Dronsfield v. Hohn*, 390 Pa. 434, 135 A. 2d 757, the Court said (pages 436, 437): "Under the Uniform Criminal Extradition Act of July 8, 1941, P. L. 288, the Courts of an asylum state cannot determine the guilt or innocence of the person sought to be extradited: Commonwealth ex rel. Hatton v. Dye, 373 Pa. 502, 96 A. 2d 127; Commonwealth ex rel. Mills v. Baldi, 166 Pa. Superior Ct. 321, 70 A. 2d 439. The requisition will be sustained and extradition ordered (1) if the subject of the extradition is charged with a crime in the de-

manding state, and (2) if he was present in the demanding state at the time of the commission of the crime charged, and (3) if he is a fugitive from the demanding state, and (4) if the requisition papers are in order: Commonwealth ex rel. Henderson v. Baldi, 372 Pa. 463, 93 A. 2d 458; Commonwealth ex rel. Taylor v. Supt., Phila. County Prison, 382 Pa. 181, 114 A. 2d 343; Commonwealth ex rel. Hatton v. Dye, 373 Pa., supra. . ."

Complainants charge that "obscene" literature proscribed in §524 of The Penal Code is so vague and indefinite as to be unconstitutional. With this I strongly disagree. See *Roth & Alberts v. United States,* 354 U. S. 476; also my dissenting opinion in *Commonwealth v. Blumenstein,* 396 Pa. 417, 422, 153 A. 2d 227. Nearly everyone knows the meaning of obscene, indecent, lewd and lascivious—in my opinion these adjectives are words of such general and common usage that they have acquired a well and commonly understood meaning. It is not necessary for a statute or an indictment to charge defendants with conduct or "material, the dominant theme of [which] taken as a whole appeals to prurient interest."

Until the word "prurient" interest was employed in the opinion of the Supreme Court of the United States in the *Roth and Alberts* case, supra, I doubt if more than one juryman in ten thousand knew its meaning. I shall assume that Section 524 of The Penal Code is, as the Commonwealth contends, valid and constitutional.

It is a wise and universally accepted general rule that criminal cases should be tried and disposed of in Criminal Courts and not in Courts of Equity. "[A Court of Equity] has no jurisdiction over the prosecution, the punishment or the pardon of crimes or misdemeanors . . .": *Ex Parte Sawyer,* 124 U. S. 200, 210; *Douglas v. Jeannette,* 319 U. S. 157. As this Court

aptly said in *Meadville Park Theatre Corp. v. Mook,* 337 Pa. 21, 24, 10 A. 2d 437 : ". . . The machinery of the criminal law is designed for the protection of society and the office of district attorney is an important part of that machinery. . . . Only confusion and frustration in the enforcement of these [criminal] laws would result if a person arrested or about to be arrested for their violation could by transforming himself into a complainant and a district attorney into a defendant, in civil proceedings, have his guilt or innocence adjudicated by a court of equity."

There is not the slightest doubt that the general rule above enunciated is sound, wise and necessary for the protection of society. Nevertheless certain exceptions have been recognized. While Equity generally confines itself to equitable protection and relief of property rights, its jurisdiction has been extended to include the protection of personal rights, even though the act against which an injunction is sought involves a crime as well as irreparable damage to property or to personal rights, or a multiplicity of suits. In *Everett v. Harron,* 380 Pa. 123, 110 A. 2d 383, the Court enjoined the owners of 4 acres and refreshment stands known as Boulevard Pools from excluding negroes therefrom.* The Court, speaking through former Chief Justice STERN, in a lengthy and learned review of the authorities, said (pages 128-129) : "It being clear, then, that plaintiffs have a right to proceed against defendants in a civil action to recover damages, have they also a right to equitable relief by way of injunction? Defendants urge two reasons why such relief should not be granted: (1) because of the penal section attached to the statute, and (2) because no property right of plaintiffs is involved.

---

* *Everett v. Harron,* in my judgment, went to an extreme in sustaining injunctive relief where criminal acts were committed and should not be further extended.

"As to the first of these alleged barriers, it is true that it has frequently been stated that equity will not act merely to enjoin the commission of a crime, and that a bill in equity having for its sole purpose an injunction against crime does not lie: Klein v. Livingston Club, 177 Pa. 224, 228, 35 A. 606; Commonwealth v. Smith, 266 Pa. 511, 516, 109 A. 786, 788; Diamond v. Diamond, 372 Pa. 562, 94 A. 2d 569. This does not mean, however, that, even though there be other reasons for invoking the jurisdiction of equity, no injunctive relief can be granted if the act against which it is directed is subject to a criminal penalty. The proper statement of the rule is this,—that the mere fact that the act complained of is a crime neither confers equitable jurisdiction nor ousts it. It was said in People ex rel. Bennett, Attorney-General v. Laman, 277 N. Y. 368, 376, 14 N.E. 2d 439, 442: 'Whether or not the act sought to be enjoined is a crime, is immaterial. Equity does not seek to enjoin it simply because it is a crime; it seeks to protect some proper interest. If the interest sought to be protected is one of which equity will take cognizance, it will not refuse to take jurisdiction on the ground that the act which invades that interest is punishable by the penal statutes of the State.' In short, while equity will not enjoin the commission of a crime in order to enforce the criminal law, the criminal nature of an act will not deprive equity of jurisdiction otherwise attaching. As a matter of fact, the cases are legion both in our own State and elsewhere where injunctive relief has been granted although the commission of an act which is subject to a criminal penalty is thereby being enjoined: Commonwealth v. Kennedy, 240 Pa. 214, 87 A. 605; Ashinsky v. Levenson, 256 Pa. 14, 100 A. 491; Commonwealth v. Soboleski, 303 Pa. 53, 153 A. 898; Childs v. Smeltzer, 315 Pa. 9, 171 A. 883; Shortz v. Farrell, 327 Pa. 81, 193 A. 20; Neill v. Gimbel Brothers, Inc., 330 Pa. 213, 199 A. 178; Palmer

v. O'Hara, 359 Pa. 213, 58 A. 2d 574; Boggs v. Werner, 372 Pa. 312, 94 A. 2d 50; cf. Commonwealth ex rel. Grauman v. Continental Co., Inc., 275 Ky. 238, 121 S.W. 2d 49; Commonwealth v. Anderson, 237 S.W. 2d 860 (Ky.). See also 28 Am. Jur. 336, §148. Indeed a familiar example where such relief is commonly granted is the issuance of injunctions against picketing attended by violence,—in effect, therefore, against acts of assault and battery. In Martin v. Baldy, 249 Pa. 253, 94 A. 1091, it was held that, while a court of equity will not ordinarily enjoin a criminal proceeding against an individual, it will assume jurisdiction where a multiplicity of suits may be prevented *or where a fundamental question of legal right is involved.*"*

No legal rights of the plaintiffs qua taxpayers have been violated. If the Constitutional rights of the complainants who have been indicted are being violated, are they entitled to injunctive relief against extradition, or are they restricted to raising these Constitutional questions at the time of their criminal trial?** This is the most important question here involved.

Can citizens of California be extradited to Philadelphia for a crime which, if committed at all, was committed in California against the laws of California as well as against the laws of the United States*** and against the laws of Pennsylvania.*** Will Equity enjoin

---

* Italics throughout, ours.

** Or prior thereto in a habeas corpus proceeding in California.

*** Many cases and many text authorities hold that the facts herein alleged constituted a crime in Pennsylvania and complainants would be triable here if they voluntarily appeared or were caught in Pennsylvania. See *Strassheim v. Daily*, 221 U. S. 280; 14 Am. Jur., Criminal Law [pages 926-927, §227]; Restatement, Conflict of Laws, page 504, §428; Beale, Conflict of Laws, Volume 2, pages 1359-60, §428.8. Also: Article I, Section 9, of the Constitution of Pennsylvania, provides: "In all criminal prosecutions the accused hath a right to . . . a speedy public trial by an impartial jury *of the vicinage*, . . . nor can he be deprived of his life, liberty or prop-

this extradition proceeding which is unauthorized by any Statute of Pennsylvania and which clearly violates Article IV, Section 2(2) of the Constitution of the United States, and the Due Process Clause of the 14th Amendment?

The Governor of Pennsylvania has no common law or inherent Sovereign power to demand, or to grant or to compel extradition. Authority for extradition must be found either in the Constitution, or in a Statute which authorizes extradition without violating the Constitution.

Section 6 of the Uniform Criminal Extradition Act of 1941, upon which the Commonwealth relies to sustain the present extradition proceedings, (a) must be strictly construed: *Commonwealth ex rel. Spivak v. Heinz,* 141 Pa. Superior Ct. 158, 14 A. 2d 875; *United States ex rel. McCline v. Meyering, Sheriff,* 75 F. 2d 716; (b) it does not authorize an extradition in this case, and (c) it clearly violates the Constitution of the United States and possibly Article I, Section 9 of the Constitution of Pennsylvania. Section 6 provides:

"*The Governor of this State may also surrender* on demand of the executive authority of any other state—[there was no demand by California]—any person in this State—[the complainants are not persons in the State of Pennsylvania]—charged in such other state [California] in the manner provided in section 3 with committing an act in this State or in a third state intentionally resulting in a crime in the state whose executive authority is making the demand, and the provisions of this act not otherwise inconsistent shall apply to such cases even though the accused was not in that state at the time of the commission of the crime

---

erty unless by the judgment of his peers or the law of the land." Similar language has been interpreted by Courts of our sister states and by text authorities to mean that a crime such as is here charged has been committed in both California and Pennsylvania.

and has not fled therefrom." Analysis makes clear that the limited language of this section gives authority to the Governor of Pennsylvania to surrender an accused who is in Pennsylvania, but no authority to demand the return to Pennsylvania—for trial here—of a person in California who was never in Pennsylvania.

Far more important, however, this section as interpreted by the majority is, as we shall see, unconstitutional.

The Commissioners on Uniform State Laws recognized the doubtful constitutionality of Section 6 of the Extradition Act, and attempted to very narrowly limit and restrict it. In the Handbook of National Conference of Commissioners on Uniform State Laws and Proceedings, 1926 (pages 586-587) the Commissioners stated with respect to Section 6 ". . . we have included a provision as Section 6 of this draft, authorizing the extradition of persons who may have never fled from justice at all, but who have committed homicide across the border of a state by shooting or other means coming within the common judicial conclusion that the crime is committed at the place where the person is killed."

I am convinced that Section 6 of the Uniform Criminal Extradition Act was never intended to be applicable to a use of the mails (for illegal purposes), or to make a conspiratorial act in California an *extraditable* crime in Pennsylvania; and if so interpreted, it violates the Federal Constitution.

Article IV, Section 2(2) provides: "A person charged in any State with Treason, Felony, or other Crime, *who shall flee from justice, and be found in another State,* shall on Demand of the executive Authority *of the State from which he fled,* be delivered up, to be removed to the State having jurisdiction of the Crime."

The Due Process Clause of Article XIV guarantees the privileges of citizens and provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, *without due process of law*;* nor deny to any person within its jurisdiction the equal protection of the laws."

The Federal Constitution thus clearly provides, expressly or by necessary implication, that a person accused of crime can be tried only by a jury of the district in the State where the crime was committed, and can be extradited only when he has fled from the demanding State. The purpose of these Constitutional provisions was to prevent a citizen from being deported from State to State except if and as specifically authorized by the Constitution; and these privileges and immunities from extradition must be liberally construed in favor of citizens and other persons accused of crime.

*Strassheim v. Daily,* 221 U. S. 280, expressly and specifically holds that the extradition herein sought would violate the Federal Constitution. Mr. Justice HOLMES delivering the opinion of the Court said (pages 281, 283, 284-285): "This is an appeal from an order on habeas corpus discharging the respondent, Daily, from custody under a warrant of the Governor of Illinois directing his extradition to Michigan as a fugitive from justice from that State. Daily, it appears, had been indicted in Michigan for bribery and also for obtaining money from the State by false pretenses, and

---

* See also Article III, Section 2, cl. 3, of the Constitution of the United States, which provides: "The Trial of all Crimes, except in Cases of Impeachment, shall be by jury; and such Trial shall be held in the State where the said Crimes shall have been committed; . . ."

a requisition had been issued to which the warrant of the Governor of Illinois was the response.

. . .

"We come then to the other question, whether the facts show that the defendant is a fugitive from justice.

. . .

"If a jury should believe the evidence and find that Daily did the acts that led Armstrong to betray his trust, deceived the Board of Control, and induced by fraud the payment by the State, the usage of the civilized world would warrant Michigan in punishing him, although he never had set foot in the State until after the fraud was complete. Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a State in punishing the cause of the harm as if he had been present at the effect, if the State should succeed in getting him within its power. Commonwealth v. Smith, 11 Allen, 243, 256, 259. Simpson v. State, 92 Georgia, 41. American Banana Co. v. United Fruit Co., 213 U. S. 347, 356. Commonwealth v. Macloon, 101 Massachusetts, 1, 6, 18. We may assume therefore that Daily is a criminal under the laws of Michigan.

"Of course we must admit that it does not follow that Daily is a fugitive from justice. Hyatt v. Corkran, 188 U. S. 691, 712. On the other hand, however, we think it plain that the criminal need not do within the State every act necessary to complete the crime. If he does *there* an overt act which is and is intended to be a material step toward accomplishing the crime, *and then absents himself from the State* and does the rest elsewhere, he becomes a fugitive from justice, when the crime is complete, if not before. In re Cook, 49 Fed. Rep. 833, 843, 844. Ex parte Hoffstot, 180 Fed. Rep. 240, 243. In re William Sultan, 115 No. Car. 57. For all that is necessary to convert a criminal under the

laws of a State into a fugitive from justice is that he should have left the State after having incurred guilt there, Roberts v. Reilly, 116 U. S. 80, and his overt act becomes retrospectively guilty when the contemplated result ensues." See also *Hyatt v. Corkran,* 188 U. S. 691.

I recognize that these accused persons could litigate the question of the validity and constitutionality of Section 524 of The Penal Code of Pennsylvania, and of Section 6 of the Extradition Act, at the time of their criminal trial on the present indictment. In the meantime, however, unless granted injunctive relief, they will be taken from their homes in California and extradited to Philadelphia, with consequent loss of liberty, and with a resultant enormous expense to defendants of transporting to and maintaining in Philadelphia themselves and their witnesses who live in California.

In the light of all these unusual facts and circumstances and under the principles laid down in the authorities hereinbefore cited and quoted, I would hold that Equity has jurisdiction, and that the extradition proceedings should be enjoined; otherwise these persons will be deprived of due process. Cf. *Strassheim v. Daily,* 221 U. S. 220; *Roth & Alberts v. United States,* 354 U. S. 476; *Everett v. Harron,* 380 Pa., supra; *Adams v. New Kensington,* 357 Pa. 557, 55 A. 2d 392; *Truax v. Raich,* 239 U. S. 33; *Terrace v. Thompson,* 263 U. S. 197; *Mahoning & Shenango R. & L. Co. v. New Castle,* 233 Pa. 413, 82 A. 501; *Kingsley Pictures Corporation v. Blanc,* 396 Pa. 448, 153 A. 2d 243.*

---

* This injunction will not prevent the indictment and trial of the aforesaid complainants in California where the alleged crime took place, nor will it prevent their trial in a Federal Court, if they have illegally used the United States mails.