**Bradley v. City of Johnstown**

*Robert S. Glass,* for plaintiffs,
*W. Louis Coppersmith,* for defendants.

McDONALD, P. J., September 27, 1973.—This matter is before the court on preliminary objection to a complaint in equity. It has been argued before the court en banc and briefs submitted.

The complaint alleges a class action on behalf of certain plaintiffs and the members of an unincorporated association known as the Prospect Area Development Committee (herein Prospect), all having identical interests. Defendants are the City of Johnstown (herein city) and a nonprofit corporation known as Interfaith Housing of Greater Johnstown (herein Interfaith).

It is alleged the city, on March 13, 1973, rejected Interfaith's proposal for the erection of 44 town houses in the Prospect area of the city. On May 29, 1973, city rescinded the action of March 13th, and approved the construction and plans proposed by Interfaith. It is said this action was illegal and void for various reasons, to wit: (1) the City Planning Commission has consistently refused to approve the construction; (2) the Codes Administrator had refused to issue a building permit "until forced to do so by the Mayor and two councilmen"; (3) city agreed to waive sewer tap-in fees of $19,087.80 in lieu of payment of $1,500, thus in vio-

lation of city ordinance and constituting the grant of an illegal subsidy to private interests; (4) Interfaith had failed to submit a plumbing plan prior to issuance of the building permit, and notwithstanding, city has agreed to tap into existing facilities which are inadequate; (5) city has agreed to assume full costs of labor and material to construct access roads, sanitary and storm sewers, thus constituting an illegal and discriminatory grant or subsidy to private interest; (6) failure of hearing or action to grant a variance from existing city building code; (7) failure to resubmit plans to proper city officials after changes by the developer.

Other general allegations in paragraph 7 of the complaint indicate the construction of these units which would not be of the type needed in the city, are being constructed without concern for the welfare of the residents on a site "totally impractical and unsuitable," without proper and competent appraisal, in order to obtain funds which will be a windfall for the developer rather than in the interests of the community.

It is apparent from the preliminary objection which relies on the Pennsylvania Municipalities Planning Code of July 31, 1968, P. L. 805, art. I, sec. 101 et seq., 53 PS §10105 et seq., as amended (herein referred to as code), city has adopted the provisions of this statute. We take judicial notice of this. City and Interfaith contend in their objection this court lacks jurisdiction because plaintiffs have failed to exercise or exhaust a statutory remedy under the code to secure review of the issuance of the building permit.

The record before this court is sparse and does not indicate, other than by averments of the complaint, the underlying actions of the various administrative agencies and/or city governing body under the code which has brought the matter in dispute. At first blush, this would appear to be a zoning matter, which in

ordinary course would require the making of a record before the zoning board. It appears, however, from the pleadings, while the zoning may have been peripherally involved in the rejection and then the approval of the construction by city, the final decision was made by the governing body rather than the administrative zoning board.

The allegation that a building permit was issued after this action, allegedly contrary to the provisions of city building codes and after allegedly illegal actions in waiving sewer tap-in fees, agreeing to construction of access roads, sanitary and storm sewers, and the tapping of existing inadequate sewer facilities to the discrimination of other city residents, raises not only matters justiciable by a zoning appeal proceeding, but other issues not within the jurisdictional function of a zoning board.

The pivotal issues raised by the preliminary objection are: (1) does this court lack jurisdiction because plaintiffs have failed to exhaust a statutory remedy, and (2) if there is a statutory remedy, is it adequate?

By way of background, the purposes of the code, as set forth in section 105, are:

"It is the intent, purpose and scope of this act to protect and promote safety, health and morals; to accomplish a coordinated development of municipalities, other than cities of the first class and second class; to provide for the general welfare by guiding and protecting amenity, convenience, future governmental, economic, practical, and social and cultural facilities, development and growth, as well as the improvement of governmental processes and functions; to guide uses of land and structures, type and location of streets, public grounds and other facilities; and to permit municipalities other than cities of the first class and second class, to minimize such problems as may presently

exist or which may be foreseen. It is the further intent of this act that any recommendations made by any planning agency to any governing body shall be advisory only."

Obviously, the accomplishment of these laudable purposes is the concern and responsibility of the governing body. It is aided and assisted by a planning commission whose recommendations are advisory only. It is significant, however, the governing body and its agencies are limited in their actions by the aforesaid purposes of the code, and are bound to follow its procedures.

It is axiomatic that equity will not intervene where there exists an adequate statutory or complete remedy at law affording due process: Wagner v. International Brotherhood of Electricians, Local No. 1305, 395 Pa. 380; Cooper v. McDermott, 399 Pa. 160. However, the mere existence of a statutory remedy is not sufficient to oust equity if it is not adequate: Philadelphia Life Insurance Co. v. Commonwealth, 410 Pa. 571, 580.

We are here concerned with the actions of public officials. It is a general rule equity will not restrain or interfere with the exercise of discretionary powers of public officers, unless to prevent the abuse of entrusted power adverse to the public interest when the exercise of that power is based on a misconception of law, total lack of power or the result of arbitrary conduct: Downing v. Erie School District, 360 Pa. 29; Philadelphia Life Insurance Co. v. Commonwealth, supra.

It is averred in the pleadings, which, for the purpose of the disposition of the preliminary objection we may accept as true, that certain events have occurred. The plan of construction as proposed by Interfaith was reviewed by the Planning Commission and a recommendation made that it be rejected by the city. City, on

March 13, 1973, by official action, rejected the plan. Subsequently, and for the alleged reason that Interfaith has "persistently lobbied for and finally persuaded" the mayor and two councilmen to approve the construction and plans; one councilman "switched" his vote, and the construction was approved; that, thereafter, the building code's administrator was "forced" to issue a building permit by the mayor and the two councilmen. Other averments indicate actions which were not only in violation of existing city ordinances and thus illegal, but also in discrimination of other city residents. These averments raise a serious question of official action, whether that action was arbitrary or under misconception of law. If these matters could be decided by a statutory remedy through hearing before an administrative board, then it would seem defendants' preliminary objection has merit. However, the narrow review on appeal to a zoning board or other administrative agency would not provide adequate investigation and decision on the serious aspects of official actions which are alleged to be arbitrary, illegal and discriminatory and unrelated to zoning issues.

We are concerned here also with the procedures required under the code. After the rejection of the construction and plans on March 13, 1973, and here we are unable to ascertain from those pleadings before us the basis of this rejection, whether for violation of the zoning provisions and requirements, or other reasons, within two months city reversed its decision. There is no indication in the interim of a challenge by Interfaith to the decision of March 13th, or of a reapplication and/or modification of plans as required by the code. It is averred this was not done. The only averment, and upon which we must rely, is, that, after lob-

bying pressure, one of the previously dissenting members of council "switched" his vote to affirmative for the reason he had been "misinformed."

The purpose of the code, as set forth above, requires a thorough consideration of its objectives in making a decision. Thus, the alleged precipitous action of city at its meeting on May 29, 1973, and failure to follow code procedures would challenge the action of city as being arbitrary or based on a misconception of law.

Defendants contend, however, plaintiffs had an exclusive method for securing review of the issuance of the building permit by challenge to the zoning hearing board. There is no doubt this procedure is available in cases where the board has jurisdiction over a zoning matter under sections 909-912 of the code. However, as indicated by the foregoing discussion, the issues are of greater depth, encompassing not only zoning matters, but, as averred, striking at the actions of public officials, not only in permitting land use contrary to existing codes, but also other actions beyond the scope of zoning review.

We are aware it is not the function of equity to intervene in a routine zoning matter. This well-known decision of our appellate courts needs no citation. We point out, however, and it is evident in our discussion, the averments of the complaint, which are the only factual matters before us at this stage of the proceeding, indicate this is not a routine zoning matter.

We are also aware the code by its very purposes serves laudable objectives in providing procedures for comprehensive and coordinated development of municipalities and solutions of modern-day urban problems consistent with the general welfare. The implementation of these objectives is and should be a function of local government. The elected representa-

tives of the citizens have wide discretion under the code. This discretion should not, as in the general law relating to such acts of public officials, be subject to review or restriction, except for flagrant and gross abuse. However, in our view, and we find no definitive decision on this under the code, this discretion should not be without limit, if in the exercise of it, the procedures which are designed to encourage community interest are circumvented. Or, the actions upon which decisions are founded, however meritorious they may be in the judgment and conscience of those making them, are tainted by illegality or discrimination against others in the community. In such case, those aggrieved should have a forum which provides an adequate review.

In view of our discussion, where the acts of public officials are charged as illegal and discriminatory, the function of a subordinate administrative agency is wholly inadequate to provide the review or forum as defendants contend. In dismissing the preliminary objection, we emphasize at this stage there is no intimation or inference that city's actions were illegal, discriminatory, arbitrary or under misconception of law. Our decision is based on a legal question at a procedural stage in the case.

We conclude, therefore, the pleadings are sufficient to raise the foregoing issues and warrant the intervention of equity.

## ORDER

Now, September 27, 1973, after argument and upon consideration of the records and briefs, defendants' preliminary objection is dismissed; and defendants are ordered to file a responsive pleading within 20 days after receipt of a copy of this opinion and order.