IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Timothy Lee Kephart,  :
                Appellant  :
   :  No.  1677 C.D. 2019
        v.  :
   :  Submitted: June 5, 2020
Commonwealth of Pennsylvania  :
Office of District Attorney Clearfield  :
County, William A. Shaw Jr.,  :
District Attorney  :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE J. ANDREW CROMPTON, Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                FILED:  April 16, 2021


Timothy Lee Kephart[1] (Kephart), *pro se*, appeals the October 31, 2019 order of the Court of Common Pleas of Clearfield County (lower court), sustaining preliminary objections and dismissing Kephart's civil complaint against Clearfield County District Attorney, William A. Shaw, Jr., (District Attorney).

**Factual and Procedural Background**

Kephart's complaint sets forth the following averments.  In December 2014, Kephart was arrested and charged with withholding employee pension funds and medical insurance premiums from employees and failing to make required disposition of those funds.  Kephart pled not guilty to the charges.  In May of 2015, the District

---

[1] Kephart is an inmate incarcerated at State Correctional Institution (SCI) Laurel Highlands.

Attorney offered Kephart a plea deal that required Kephart to plead guilty to 96 counts of Theft by Failure to Make Required Disposition of Funds Received.[2] (Civil Complaint, ¶18, Reproduced Record (R.R.) at 5a.[3]) In exchange, the District Attorney promised to express no view as to whether the individual sentences on the counts should be imposed consecutively or concurrently or the specific length of a minimum sentence, and agreed that the final grading of each charge was subject to change following a restitution hearing.[4] *Id.* ¶20, R.R. at 5a.

Kephart agreed to these terms and on June 9, 2015, Kephart and the District Attorney jointly filed a Negotiated Plea Agreement and Guilty Plea Colloquy (Plea Agreement) with the Court of Common Pleas of Clearfield County, Criminal Division (criminal trial court) at Criminal Docket No. CP-17-CR-0106-2015. *Id*. ¶4, R.R. at 3a.

On June 15, 2015, the criminal trial court conducted an oral plea colloquy at which Kephart agreed to these terms. *Id*., ¶5, R.R. at 3a. Kephart pled guilty to 96 counts of Theft by Failure to Make Required Disposition of Funds Received. (Plea Agreement; R.R. at 43a-48a.) Counts 1-36 (Pension Funds) were graded Felony of the Third Degree with a maximum penalty of 7 years.[5] Counts 37-77 (Pension Funds)

---

[2] 18 Pa.C.S. §3927.

[3] The Reproduced Record is attached to Kephart's Brief. However, he has failed to number the pages as required by Pa. R.A.P. 2173. For ease of reference and clarity, the Court has done so, starting with the page immediately following Kephart's Brief as page 1a.

[4] A restitution hearing is required to be held prior to imposing a sentence to make restitution. 18 Pa.C.S. §1106.

[5] The grading of theft offenses is set forth in 18 Pa.C.S. §3903 and is generally based upon the amount involved. A theft offense constitutes a felony of the third degree if the amount involved exceeds $2,000; a misdemeanor in the first degree if the amount involved exceeds $200 but is less **(Footnote continued on next page…)**

were graded Misdemeanor of the First Degree with a maximum penalty of 5 years. Counts 78-79 (Medical Insurance Premiums) were graded Misdemeanor of the Second Degree with a maximum penalty of 2 years. Counts 80-96 (Pension Funds) were graded Misdemeanor of the First Degree with a maximum penalty of 5 years. *Id.*

On July 8, 2015, the District Attorney provided Kephart with information he had received from Medova Health Care (Medova). *Id.* ¶6, R.R. at 3a.

On July 14, 2015, the District Attorney filed an amended information. Counts 1 through 36 (Pension Funds) were graded Felonies of the Third Degree with a maximum penalty of 7 years. Counts 37 through 94 (Pension Funds and Medical Insurance Premiums) were graded Misdemeanors in the First Degree with a maximum penalty of 5 years. Counts 95 and 96 (Pension Funds) were graded Misdemeanors in the Second Degree with a maximum penalty of 2 years. *Id.* ¶7, R.R. at 3a.

On July 31, 2015, the criminal trial court conducted a restitution hearing prior to the sentencing hearing. *Id.* ¶8, R.R. at 3a. At the hearing, the District Attorney presented information and claims of restitution for the following 7 counts: 78, 82, 83, 84, 86, 89 and 94, which totaled $42,787.03. *Id.* ¶9, R.R. at 3a. Kephart was sentenced to 8 to 32 years' imprisonment in the aggregate and was ordered to pay $42,787.03 restitution for the 7 claims presented by the District Attorney. *Id.* ¶10, R.R. at 4a.

Kephart filed a post-sentence motion challenging the restitution order. On January 8, 2016, the criminal trial court struck the 7 restitution payments in their entirety, finding that the District Attorney did not prove a basis for restitution. *Id.* ¶11, R.R. at 4a. On January 15, 2016, the criminal trial court resentenced Kephart to an aggregate term of 7 to 20 years' imprisonment, based on the counts and gradings as they were presented in the original Plea Agreement. *Id.* ¶12, R.R. at 4a. Kephart did

---

than $2,000, and a misdemeanor in the second degree if the amount involved was $50 or more but less than $200.

not file a post-sentence motion challenging the January 15, 2016 sentence or the restitution.

**The Civil Complaint**

On June 4, 2019, Kephart instituted a civil action against the District Attorney personally. In Count 1 for "Breach of Contract," Kephart avers that the District Attorney breached the Plea Agreement "by failing to amend or provide final grading for all counts subject to restitution," as Kephart contends was required by the Plea Agreement. Kephart alleges that the District Attorney

    (1) failed to provide final grading for counts 1-77, and 95 through 96, even though he acknowledged and affirmed at the restitution hearing that the restitution for these counts had been paid, an accounting of the amounts for each count was not presented to determine final grading;

    (2) failed to present any claims for restitution for counts 79, 80, 81, 85, 87, 88, 90, 91, and 93 and further failed to provide a final grading based on this presentment of zero restitution; and

    (3) failed to provide final grading for counts 78, 82, 83, 84, 86, 89, and 94 after the criminal trial court had entered an order stating that the District Attorney did not prove a basis for restitution for these counts.

(Complaint, ¶15, R.R. at 4a.) Kephart alleges that he did not receive the benefit of the bargain of his Plea Agreement. He asserts he was sentenced without the reduction of grading or dismissal of certain counts to which he would have been entitled had the District Attorney complied with the terms of the Plea Agreement. *Id.* ¶16, R.R. at 4a.

In Count 2 for Promissory Estoppel, Kephart alleges that he initially pled not guilty, but changed his position based on the District Attorney's promises. *Id.* ¶22, R.R. at 5a. He contends that his detrimental reliance resulted in the injustice of being sentenced without the benefit of the reduction in grading or the dismissal of certain counts. *Id.* ¶23, R.R. at 5a. In Count 3 for Misrepresentation, Kephart alleges that the District Attorney misrepresented facts in the Affidavit of Probable Cause and Criminal Complaint. *Id.* ¶25, R.R. at 5a. He avers that as a result of these misrepresentations, the criminal trial court sentenced him under false pretenses and with bias. *Id.* ¶40, R.R. at 7a.

In his prayer for relief, Kephart seeks "an order terminating (the Plea Agreement) . . . rendering it null and void based on the fats averred above and return [Kephart] to the same position he was in before entering into [the Plea Agreement]." *Id.* ¶40, R.R. at 7a.

**The District Attorney's Preliminary Objections**

The District Attorney filed preliminary objections to the complaint based on: (1) lack of jurisdiction over subject matter and/or person of the District Attorney; (2) legal insufficiency of the pleading (demurrer); and (3) failure to exhaust statutory remedies/availability of full, complete, and adequate remedy at law. The District Attorney argued that Kephart's complaint constitutes an illegitimate and invalid collateral attack on the criminal trial court's sentencing of Kephart in his criminal case on January 8, 2016, and that there is no cognizable basis for the civil division of the same court to vacate that sentencing or intrude in the criminal proceeding.

**The Lower Court's Order**

On October 31, 2019, the lower court sustained the District Attorney's preliminary objections and dismissed Kephart's complaint, ruling that Kephart

5

provided no authority for the proposition that a civil proceeding attacking a criminal sentence is proper. The trial court concluded that a civil court may not vacate the sentence of the trial court after sentencing. Kephart now appeals.[6]

## Analysis

In his first issue, Kephart argues that even though a plea agreement arises in a criminal context, it remains contractual in nature and is to be analyzed under contract principles. Commensurately, he argues that he is entitled to enforce contractual obligations and is entitled to contractual remedies. Therefore, he maintains that the lower court's civil division is the proper forum to rule on his equitable claims. *See* Kephart's Br. at 14 ("The adjudication of Kephart's civil contract rights belongs in the Civil Division where Common law contract claims are normally heard."). He further contends that preventing him from litigating his contract-related claims in the civil courts denies him equal access and equal protection of the law.[7]

---

[6] "Our review of a trial court's order sustaining preliminary objections and dismissing a complaint is limited to determining whether the trial court abused its discretion or committed an error of law." *Szoko v. Township of Wilkins*, 974 A.2d 1216, 1219 n.7 (Pa. Cmwlth. 2009). When "reviewing preliminary objections, all well-pleaded relevant and material facts are to be considered as true, and preliminary objections shall only be sustained when they are free and clear from doubt." *Id.* Moreover, "such review raises a question of law as to which our standard of review is *de novo* and our scope of review is plenary." *Id.*

The question presented by a demurrer "is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it." *MacElree v. Philadelphia Newspapers, Inc.*, 674 A.2d 1050, 1054 (Pa. 1996). "In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred." *Orange Stones Co. v. City of Reading*, 87 A.3d 1014, 1025 (Pa. Cmwlth. 2014).

[7] Kephart's complaint does not raise any constitutional claims and they will not be addressed for the first time in this appeal. *See* Pa. R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

6

Kephart maintains that authority exists for his civil complaint under the Pennsylvania Supreme Court's decisions in *Konyk v. Pennsylvania State Police*, 183 A.3d 981 (Pa. 2018), and *Commonwealth v. Martinez*, 147 A.3d 517 (Pa. 2016), as well as the Pennsylvania Superior Court's decision in *Commonwealth v. Hainesworth*, 82 A.3d 444 (Pa. Super. 2013) (*en banc*). He contends these cases all support the proposition that the civil division of the lower court is the proper forum for the adjudication of his contract-related claims.

Initially, we note that Kephart is correct in his assertion that negotiated plea agreements are indeed contracts and a defendant is entitled to the benefit of the bargain he struck with the Commonwealth. The law on the enforcement of plea agreements is well-established. Although plea agreements arise "in a criminal context," they are "analyzed under contract law standards." *Hainesworth*, 82 A.3d at 449. Once a plea agreement has been accepted by a trial court, the defendant is "entitled to the benefit of his bargain[.]" *Martinez*, 147 A.3d at 532-33. The Commonwealth must "abide by the terms of the plea agreement." *Commonwealth v. Spence*, 627 A.2d 1176, 1184 (Pa. 1993) (citing *Santobello v. New York*, 404 U.S. 257, 260 (1971)). Further, courts demand "strict compliance" with the terms of a plea agreement "in order to avoid any possible perversion of the plea bargaining system[.]" *Martinez*, 147 A.3d at 532 (quoting *Commonwealth v. Zuber*, 353 A.2d 441, 444 (Pa. 1976)).

Thus, as argued by Kephart, a plea agreement is a contract and a defendant may proceed against the prosecuting entity for specific performance of the contractual terms. However, this is where our agreement with Kephart's legal analysis ends. Although plea agreements are contracts, none of the cases cited by Kephart provide authority on the question of whether a separate proceeding may be maintained in the

7

civil division of the lower court to enforce or rescind a plea bargain. *Martinez* and *Hainesworth* were both direct appeals in criminal proceedings. Neither were civil actions. In both cases, the criminal defendants sought relief from the same criminal trial court which presided over their criminal proceedings.

*Martinez*[8] addressed whether the registration requirements of the Sex Offender Registration and Notification Act (SORNA)[9] could be imposed upon a sex offender who entered into a plea agreement prior to the enactment of SORNA, and where sexual offender registration was a term of the agreement. The defendants, applying contract principles, argued that application of SORNA's increased registration requirements to them violated their plea agreements. *Martinez*, 147 A.3d at 523-24. Each defendant challenged the increase of sexual registration term through a "Petition to Enforce Plea Agreement or for a Writ of Habeas Corpus" filed in the court where the criminal action arose. *Id.* The Supreme Court concluded that when trial courts accept plea agreements, the convicted criminals are entitled to the benefit of their bargains. *Id.* at 533.

In *Hainesworth*, an *en banc* panel of the Superior Court was asked to consider whether retroactive application of the SORNA registration requirements breached the terms of the defendant's plea agreement. *Hainesworth*, 82 A.3d at 446-47. The defendant filed a motion seeking termination of his supervision. The trial court ordered specific enforcement of the parties' plea agreement. Applying contract principles, the *Hainesworth* Court concluded that the trial court did not err in ordering

---

[8] *Martinez* involved three consolidated appeals, all of which originated in the Court of Common Pleas of York County before the same judge.

[9] 42 Pa.C.S. §§9799.10-9799.41. Our Supreme Court held that SORNA was unconstitutional in *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017), *cert. denied sub nom. Pennsylvania v. Muniz*, 138 S. Ct. 925 (2018). The new SORNA appears at 42 Pa.C.S. §9799.10-.75.

specific enforcement of Hainesworth's plea agreement. *Id*. at 447. In upholding the trial court's determination, the Superior Court found that sexual offender registration was a term of the parties' plea agreement. *Id*. at 448-49. The Superior Court highlighted that, while a plea agreement arises in a criminal context, it remains contractual in nature and, therefore, must be analyzed under principles of contract law. *Id*. at 449. Accordingly, the Superior Court determined that the objective evidence of record supported the conclusion that the parties had negotiated an agreement that would not require the defendant to register as a sex offender; thus, imposition of a registration requirement, based on a subsequent change in law, would breach that agreement. *Id*. at 450.

Thus, while *Martinez* and *Hainesworth* recognized that defendants are entitled to the benefit of the bargains struck with the Commonwealth when the trial court accepted the parties' plea agreements, the procedural framework was never put in issue or discussed. They are not, therefore, authority on the question of whether a separate civil proceeding may be maintained to enforce a plea bargain.

We also do not agree that *Konyk* supports Kephart's position that the civil division of the lower court was the proper forum to assert his contract-related claims against the District Attorney. In *Konyk*, a federal defendant filed an amended petition for review in the nature of a writ of mandamus in this Court's original jurisdiction, naming the Pennsylvania State Police (PSP) as respondent and seeking equitable relief in the form of specific performance of the terms of his plea agreement with the United States. We held that we had jurisdiction to consider the matter under Section 761(a) of the Judicial Code, which provides "the "Commonwealth Court shall have original jurisdiction of all civil actions or proceedings . . . [a]gainst the Commonwealth government, including any officer thereof, acting in his official capacity." 42 Pa.C.S.

9

§761(a). However, on the merits, we concluded that the defendant failed to support a claim that the PSP was a third-party beneficiary to his federal plea agreement and that he failed to prove there was an implied contract between him and the Commonwealth as a result of his federal plea agreement.

On appeal, the Supreme Court upheld our decision, including our conclusion that we had exclusive jurisdiction over the breach of contract claim against the PSP as a Commonwealth agency. *Konyk*, 183 A.3d at 986. The Supreme Court rejected the defendant's argument that he was entitled to relief under *Martinez*. *Id*. at 989-90. The Supreme Court held that, although *Martinez* indicated that a defendant may proceed against the prosecuting entity for specific performance of the contractual terms, *Martinez* did not address whether the Commonwealth could be held liable for specific performance of an agreement forged between a defendant and the government of another jurisdiction. *Id*.

Although *Konyk* confirmed that a defendant may proceed against the prosecuting entity for specific performance of the contractual terms, it did not sanction a separate civil proceeding to enforce a plea bargain. It said nothing of the sort.

Pennsylvania courts have decided cases regarding sexual offender registration statutes that were challenged in various types of filings, including in this Court's original jurisdiction. As our Supreme Court has explained, allowing sexual offenders the "choice" of a procedural mechanism, "considers the fact that frequent changes to sexual offender registration statutes, along with more onerous requirements and retroactive application, complicate registrants' ability to challenge new requirements imposed years after their sentences become final." *Commonwealth v. Lacombe*, 234 A.3d 602, 617 (Pa. 2020). No such concern exists here.

10

With the single exception of the change-in-the-law cases filed in this Court's original jurisdiction, we are aware of no other situation where a criminal defendant successfully invoked the jurisdiction of a civil court to consider a defendant's request to enforce or terminate a plea agreement.

An *en banc* panel of this Court made clear in *Dougherty v. Pennsylvania State Police*, 138 A.3d 152, 168 (Pa. Cmwlth. 2016) (*en banc*), that this Court is not the proper forum in which to address disputes over the alleged breach of a plea agreement, and that such issue is properly resolved through the criminal justice system in the appropriate sentencing court. In *Dougherty*, filed in our original jurisdiction, we sustained the PSP's preliminary objection to a petition for review on the ground that the PSP could not be liable for breach of the petitioner's plea agreement with the Commonwealth. In doing so, we stated:

> [T]he PSP has no duty to inquire into the content or intent of any underlying plea agreement. The PSP is not a party to the plea agreement ***and disputes over the alleged breach of a plea agreement, and the impact of the plea agreement on a [sex offender's] duty to register with the PSP, are properly resolved through the criminal justice system in the appropriate sentencing court.***

*Id*. (emphasis in original removed; emphasis added).

In Pennsylvania, a defendant may move to withdraw his plea prior to sentencing pursuant to Pa.R.Crim.P. 591 or after sentence was imposed under Pa.R.Crim.P. 720. Nothing in the Criminal Rules of Procedure expressly gives the civil division of the lower court the power or authority to preside over such matters. Indeed, a review of Pennsylvania cases reveals that questions concerning the existence, scope, and enforceability of plea bargains are as a matter of course dealt with as part of the

11

primary criminal case, through motions to withdraw a guilty plea or motions to enforce a plea agreement. *See, e.g.*, *Commonwealth v. Perez*, 240 A.3d 927 (Pa. Super. 2020) (motion to withdraw a guilty plea); *Commonwealth v. Ritz*, 153 A.3d 336 (Pa. Super. 2016) (motion to enforce a plea agreement); *Commonwealth v. Tann*, 79 A.3d 1130, 1133 (Pa. Super. 2013) (a criminal defendant who is sentenced to more than was agreed upon in a negotiated plea may withdraw his guilty plea upon being deprived of the benefit of his bargain pursuant to Pa.R.Crim.P. 591(A)); *Commonwealth v. Williams*, 481 A.2d 1230, 1234 (Pa. Super. 1984) (motion to withdraw a guilty plea).

Demanding that issues involving the enforcement of plea bargains be tried within the framework of the underlying criminal proceeding makes perfect sense. First, it would result in substantial duplication and be a waste of judicial resources if defendants were permitted to conduct civil proceedings collateral to their primary criminal proceedings. Second, the judge presiding over the criminal proceedings is most familiar with the plea agreement and the circumstances surrounding its terms and conditions and, thus, is best suited to resolve questions relating to the enforceability of a plea agreement. Rule 590 of the Pennsylvania Rules of Criminal Procedure requires the judge to "conduct a separate inquiry of the defendant on the record to determine whether the defendant understands and voluntarily accepts the terms of the plea agreement on which the guilty plea or plea of *nolo contendere* is based." Pa.R.Crim.P. 590. As one court explained,

> [f]rom the standpoint of the courts, it is wasteful of judicial resources to have the bundle of facts from which the criminal action arose generate more than one litigation. One may imagine a worst case scenario in which multiple defendants conduct multiple civil proceedings collateral to a primary criminal proceeding. Beyond simple efficiency, justice will be better served if the judge who sits on the primary criminal

12

> case deals with disputed issues growing out of it which involve the proof or the parties.

*Doe v. District Attorney for Plymouth District*, 564 N.E.2d 588, 592 (Mass. App. Ct. 1991) (addressing the appropriateness of an independent civil action in any form to probe the boundaries of an alleged plea bargain made in connection with a criminal proceeding and holding that the appropriate place for enforcement of a plea agreement is the underlying criminal case).

Aside from the overall impracticality of Kephart's civil action, there are also jurisdictional impediments which prohibit it.

Pennsylvania courts have exercised considerable caution over the involvement of a court of equity in the field of law enforcement. *Marcus v. Diulus*, 363 A.2d 1205, 1208 (Pa. Super. 1976). In *Cooper v. McDermott*, 159 A.2d 486 (Pa. 1960), plaintiffs in California brought suit against the District Attorney's Office in Philadelphia to enjoin its attempt to extradite them. Our Supreme Court, in holding that the court in equity had no jurisdiction in the criminal matter, stated:

> Equity's jurisdiction does not involve control of the prosecution, punishment and pardon of crimes or misdemeanors. These important functions, for most compelling reasons and sound public policy, are performed exclusively in courts exercising criminal jurisdiction.

*Id*. at 488-89 (citations omitted).

The general rule is that courts of equity will decline jurisdiction in criminal matters, except in rare cases where there exists no adequate remedy at law. *Marcus*, 363 A.2d at 1210. *See also Clark v. Pennsylvania State Police*, 436 A.2d 1383 (Pa. 1981) (action in equity will not lie when an adequate remedy at law exists). In the present case, we find that there is an adequate remedy at law in our Rules of Criminal

Procedure and, therefore, it was not necessary for Kephart to invoke the lower court's equity jurisdiction.

Kephart's complaint confirms that after he entered into a plea agreement, after he confirmed his guilty plea in a colloquy before the trial court, and after he was sentenced in July of 2015, he was resentenced in January of 2016. Thus, he had ample opportunity to raise any issue regarding the final grading for all counts subject to restitution as required by the Plea Agreement before the trial court through the filing of a petition to enforce the Plea Agreement or to withdraw his plea in the criminal trial court. That procedure is Kephart's adequate and appropriate remedy.

**Conclusion**

We agree with the trial court that Kephart has failed to establish that he is entitled to invoke the equitable jurisdiction of the civil division of the lower court to terminate his plea agreement made in connection with a separate criminal proceeding. Although contract laws apply to plea agreements, whether the District Attorney breached the Plea Agreement, what performance and detrimental reliance there was by either party, and how the bargain, if there was one, should be enforced are issues that must be heard within framework of the underlying criminal proceeding rather than separate civil proceeding.

Because it appears certain that Kephart can prove no set of facts in support of his claim in this civil forum that would entitle him to relief, the order of the lower court is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Timothy Lee Kephart,                           :
                    Appellant          :
                             :   No. 1677 C.D. 2019
          v.                                     :
                             :
Commonwealth of Pennsylvania                    :
Office of District Attorney Clearfield          :
County, William A. Shaw Jr.,                     :
District Attorney                               :

## ***ORDER***

        AND NOW, this 16th day of April, 2021, the October 31, 2019 order of the Court of Common Pleas of Clearfield County is hereby AFFIRMED.

                                      _____
                                      PATRICIA A. McCULLOUGH, Judge