363 A.2d 1205

**Joseph MARCUS et al.**

**v.**

**Guy DIULUS et al., Appellants.**

Superior Court of Pennslvania.

Argued June 21, 1976.

Decided Sept. 27, 1976.

152

D. R. Pellegrini, Pittsburgh, for appellants.

Ronald C. Weingard, Robert B. Marcus, Wendell G. Freeland, Pittsburgh, for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, Judge:

This appeal presents a unique question: Can a court of equity enjoin officers of the Commonwealth from using evidence seized pursuant to a search warrant in criminal proceedings within the Commonwealth of Pennsylvania or from sending such evidence to authorities in other states? For the reasons hereafter stated, we find that the lower court had no jurisdiction to decide this question and reverse the decree entered below.

Prior to discussing the law involved, a short summation of the facts in this case is necessary. On February 24, 1976, a search warrant was executed for the premises of a company in Pittsburgh known as J. Marcus Wholesalers, Inc. The affiant for the warrant was Robert Swanson, an Assistant District Attorney of Denver County, Colorado, and a defendant in the present action. Guy Diulus, a detective in the Pittsburgh police department and another defendant in this case, was the law enforcement officer who executed the warrant and seized the evidence discovered during the search. The affidavit in the search warrant disclosed that the District Attorney's Office in Denver had conducted an investigation into the sale of imitation perfume in January, 1976; the investigation revealed that certain stores in the Denver area

were selling perfume in counterfeit and forged wrappings; and after further investigation, it was discovered that the source of the perfume was J. Marcus Wholesalers, Inc., in Pittsburgh, Pennsylvania. On the basis of this and other information a search warrant was issued by a magistrate in Pittsburgh.[1] The warrant charged the owners of the company with the following violations of the Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 101 *et seq.* (1973); Deceptive business practices, 18 Pa.C.S. § 4107 (1973); Theft by deception, 18 Pa.C.S. § 3922(a)(1) and (2) (1973); Conspiracy, 18 Pa.C.S. § 903 (1973); Aiding consummation of crime, 18 Pa.C.S. § 5107 (1973); Complicity, 18 Pa.C.S. § 306 (1973); and Simulating objects 18 Pa.C.S. § 4102 (1973).

A search of the premises revealed various records, documents, and other items including perfume in apparently counterfeit containers and wrappings that connected J. Marcus Wholesalers, Inc., with the illegal transactions in Denver. The evidence was seized and held by the Pittsburgh Police. Seventeen days later, on March 12, 1976, plaintiffs, J. Marcus Wholesalers, Inc., and its owners, Joseph Marcus and Jack Marcus, filed a petition for declaratory judgment and a complaint for an injunction in the equity division of the Court of Common Pleas of Allegheny County. No charges had at that time been formally made against the owners of J. Marcus Wholesalers, Inc. The petition for declaratory judgment and the complaint for injunction were both amended a few days later. The plaintiffs requested the court to find that the search and seizure conducted by the defendants, authorities of the city of Pittsburgh and county of Allegheny as well as the authorities from Denver, was unlawful and plaintiffs prayed that these public officers be en-

1. Because the probable cause section of the warrant is not an issue at this time, other facts that would be relevant to that issue are not stated.

joined from sending the evidence seized to authorities outside the Commonwealth of Pennsylvania. Subsequently, the defendants filed preliminary objections claiming that a court of equity did not have jurisdiction in this criminal matter and also that the plaintiffs did not state a cause of action in equity because they had a complete and full remedy at law. On March 24, 1976, the lower court held a hearing to consider argument on defendants' preliminary objections and to determine whether a preliminary injunction should be granted. *See* Printed Record at 72a and 98a. Although no testimony was taken at the hearing, counsel for the parties argued their respective positions on the issues of jurisdiction and the legality of the search and seizure. On May 3, 1976, the lower court made its decision and found that the search and seizure of plaintiffs' building was unlawful and enjoined the defendants not only from permitting the evidence seized to be sent to Colorado but also enjoined the use of such evidence with the Commonwealth of Pennsylvania.[2] This appeal followed.[3]

2. Although appellants, the authorities from Pennsylvania and Colorado, complain on appeal of many procedural irregularities committed by the court below, we will not consider their substance because of our disposition of the underlying question of jurisdiction.

3. Plaintiffs' motion to quash this appeal must be denied. Even though no exceptions were filed to the lower court's adjudication, *see* Pa.R.C.P. 1518, an appeal on the question of jurisdiction was proper under the Act of March 5, 1925, P.L. 23, § 1, 12 P.S. § 672. Nevertheless, plaintiffs argue that the March 24 hearing did not cover appellants' preliminary objections contesting jurisdiction. A review of the hearing, convinces this Court that counsel and the lower court considered appellants' preliminary objections at that time. *See* Printed Record at 69a, 72a, 75a, 77a and 97a. Next, plaintiffs argue that the lower court never ruled on appellants preliminary objections. The lower court's opinion however states that plaintiffs' request for declaratory and equitable relief was correct under the circumstances. In essence, the lower court was stating that its equitable jurisdiction was properly invoked. Also by granting plaintiffs declaratory and equitable relief the lower court implicitly accepted jurisdiction and in turn overruled appellants' preliminary objections.

The lower court's rationale for accepting equity jurisdiction is best explained by the following excerpt from its opinion in support of its decision:

"The plaintiffs have requested this Court to entertain declaratory and equitable relief, and at first blush, it would appear that this request is quite unique. Upon analysis, however, the request is quite proper under these circumstances. The plaintiffs are citizens of our Commonwealth, and, inasmuch as there is no criminal proceeding in our Commonwealth, the plaintiffs are quite proper in seeking the aid of the courts of their domiciliary state rather than subjecting themselves to the jeopardy of foreign jurisdiction. It is argued that the plaintiffs can well utilize the suppression procedures available within the framework of the Criminal Division of our Court, but it is quite obvious that this is not the case inasmuch as no criminal prosecution presently exists in the Commonwealth of Pennsylvania." Printed Record at 54a.

After accepting jurisdiction, the court below went on to hold that the search warrant procedure employed by the defendants was excessively harsh and that instead of a search warrant, the defendants should have used a subpoena duces tecum to obtain the evidence they desired. According to the lower court, the less onerous subpoena duces tecum procedure was available to the authorities from Colorado under the Uniform Act To Secure Attendance of Witnesses, act of June 23, 1941, P.L. 147, 19 P.S. § 622.1 *et seq.* (1964).

Because we do not initially agree with the lower court's taking of jurisdiction in this case, we will not address ourselves to the merits of the search warrant versus subpoena duces tecum issue. Nevertheless, we will take this opportunity to express concern over the question of whether the Uniform Act To Secure the Attendance of Witnesses applies to the production of physical evidence.

*Compare In the Matter of Grothe,* 59 Ill.App.2d 1, 208 N. E.2d 581 (1965) *with In re Saperstein,* 30 N.J.Super. 373, 104 A.2d 842 (1954). *See also United States v. Monjar,* 154 F.2d 954 (3d Cir. 1946). Even if the Uniform Act To Secure the Attendance of Witnesses pertains to physical evidence, we are skeptical as to its employment where the evidence was in the possession of a suspect of a crime rather than a mere witness. *See Stanford Daily v. Zurcher,* 353 F.Supp. 124 (N.D.Cal.1972). Of course, the procedure used to secure the attendance of a person charged with a crime is the Uniform Criminal Extradition Act, Act of July 8, 1941, P.L. 288, § 1 *et seq.,* 19 P.S. § 191.1 *et seq.* (1964). And it is apparent from the record that plaintiffs in this case have been indicted for various crimes by the Denver County, Colorado Grand Jury. *See* Printed Record at 58a.

 A court has the inherent power to determine on its own motion whether it has the jurisdiction to decide the cause before it. *Douglas v. City of Jeannette,* 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943); *Harris-Walsh, Inc. v. Dickson City Borough,* 420 Pa. 259, 216 A. 2d 329 (1966). Therefore, even if a party fails to raise this issue by objection or exception in the court below, it is still the affirmative duty of our Court to consider the issue of subject matter jurisdiction.[4] *Cathcart v. Crumlish,* 410 Pa. 253, 189 A.2d 243 (1963). Accordingly, plaintiffs' argument that appellants waived the issue by failing to file exceptions to the lower court's adjudication, *see* Pa.R.C.P. 1518, cannot succeed.

Blackstone's definition of equity was "the correction of that wherein the law (by reason of its universality) is deficient." *Everett v. Harron,* 380 Pa. 123, 130, 119 A.

---

4. "Despite the fact that litigants are not always sensitive to this problem, courts should be alert to question the invocation of equitable jurisdiction where its use might obstruct the functioning of the district attorney's office." *Cathcart v. Crumlish,* 410 Pa. 253, 255, 189 A.2d 243, 244–45 (1963).

2d 383, 387 (1955). Because of the various remedies at law available to one accused of a crime, "[c]ourts of equity traditionally have refused, except in rare instances, to enjoin criminal prosecutions." *Cleary v. Bolger,* 371 U.S. 392, 397, 83 S.Ct. 385, 388, 9 L.Ed.2d 390 (1963). Pennsylvania courts in particular have exercised considerable caution over the involvement of a court of equity in the field of law enforcement.

In *Cooper v. McDermott,* 399 Pa. 160, 159 A.2d 486 (1960) plaintiffs in California brought suit against the District Attorney's Office in Philadelphia to enjoin its attempt to extradite them. The Pennsylvania Supreme Court in holding that the court in equity had no jurisdiction in the criminal matter stated:

> "As a general rule, the office and jurisdiction of a court of equity, unless enlarged by statute, are limited to the protection of the rights of property and do not invade the domain of the courts of the common law. Equity's jurisdiction does not involve control of the prosecution, punishment and pardon of crimes or misdemeanors. These important functions, for most compelling reasons and sound public policy, are performed exclusively in courts exercising criminal jurisdiction."
> *Id.* at 163, 159 A.2d at 488–9 (citations omitted).

Again in *Cathcart v. Crumlish, supra,* the Supreme Court held that equity had no jurisdiction to enjoin a district attorney from subpoenaing a witness where the witness could test the validity of the subpoena in the criminal courts. *Merrick v. Jennings,* 446 Pa. 489, 288 A.2d 523 (1972) and *Sexton v. Stine,* 456 Pa. 301, 319 A.2d 666 (1974) also present cases where the Supreme Court found that jurisdiction in equity was lacking because the plaintiffs had an adequate remedy at law. As the Supreme Court so appropriately stated in *Meadville Park Theatre Corp. v. Mook,* 327 Pa. 21, 24, 10 A.2d 437, 439 (1940):

> "Only confusion and frustration in the enforcement of [the criminal laws] would result if a person arrest-

ed or about to be arrested for their violation could by transforming himself into a complainant and a district attorney into a defendant, in civil proceedings, have his guilt or innocence adjudicated by a *court of equity.*"

Although normally equity will not interfere in criminal matters, the courts of equity have in certain well-defined situations exercised their jurisdiction to enjoin criminal proceedings. For example, equity will act to enjoin criminal proceedings when: "(1) The available legal remedy will cause a multiplicity of suits . . . or, (2) The statute or ordinance in question is unconstitutional and void (either per se or as it applies to the party seeking the injunction), *and* its enforcement will cause the plaintiff irreparable loss to his property." *Pa. Soc'y For the Prevention of Cruelty to Animals v. Bravo Enterprises, Inc.,* 428 Pa. 350, 356–57, 237 A.2d 342, 346 (1968). In the present case, however, there is no threat of a multiplicity of suits if plaintiffs are prosecuted; nor is there any allegation that an unconstitutional law is being enforced.

Equity has also intervened when property rights have been threatened by criminal proceedings and the plaintiff had no remedy in the criminal courts. In *Kingsley International Pictures Corp. v. Blanc,* 396 Pa. 448, 153 A.2d 243 (1959), the District Attorney threatened to prosecute certain theatre owners for exhibiting an allegedly obscene film. Consequently, the owners refused to show the film and plaintiff, the distributor of the film, brought suit in equity to enjoin the District Attorney from enforcing what plaintiff considered to be an unconstitutional obscenity statute. The Pennsylvania Supreme Court held that because plaintiff would not have been a party to the threatened criminal proceedings, no remedy at law was available to challenge the statute. Therefore, equity was properly invoked to provide relief to the plaintiff.

The Federal Courts have also entertained equity jurisdiction under certain specific circumstances. The United States Supreme Court has held that Federal courts could

enjoin a state prosecution when the statute involved was unconstitutional on its face, its enforcement was evidenced by bad faith, and the freedom of expression of the plaintiffs was being threatened. *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). *But see Perez v. Ledesma*, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed. 2d 701 (1971). Nevertheless, when a taxpayer had an adequate remedy at law to challenge the seizure of certain evidence from another person, the United States Supreme Court dismissed a suit for an injunction because of the lack of equity. *Resiman v. Caplin*, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964).

Courts have been hesitant to enjoin criminal proceedings that have been commenced in other jurisdictions. For example, in *Smith v. Katzenbach*, 122 U.S.App.D.C. 113, 351 F.2d 810 (1965), the Court in the District of Columbia would not in equity enjoin Federal tax agents in North Carolina from using certain evidence. Similarly, in *Appeal of Kitzer*, 369 F.2d 677 (7th Cir. 1966), a Federal Court in Illinois held that it had no jurisdiction to dismiss an indictment or suppress evidence in a criminal proceeding in Minnesota even though the charges were based on evidence received from Illinois.

Courts also have generally refused to enjoin persons under its own jurisdiction from assisting criminal prosecutions in other jurisdictions. In *Steiner v. Hocke*, 272 F.2d 384 (9th Cir. 1959), plaintiff in California was indicted in Michigan for mailing obscene literature. Before he was extradited he attempted in Federal Court in California to enjoin the United States Marshall there from removing him. The Court refused holding that equity will not intervene in criminal prosecutions even though plaintiff would be subjected to great inconvenience by being forced to defend himself in Michigan. *Weiner v. Kelly*, 82 So.2d 155 (Fla.1955) is another case similar in some ways to the present appeal. In *Weiner*, certain evidence seized by state authorities in Florida was suppressed by the Florida state court because of a defective

search warrant. Federal authorities then decided to prosecute the plaintiffs for violations of federal law and requested from the state authorities the evidence they had seized. Plaintiffs went back to the Florida state court and asked it to enjoin the state officers from sending the suppressed evidence to the federal authorities. The state court refused to enjoin the state officers. However, under a similar fact situation, the United States Supreme Court in *Rea v. United States,* 350 U.S. 214, 76 S. Ct. 292, 100 L.Ed. 233 (1956) held that injunctive relief should be granted to prevent federal officers from using evidence, previously suppressed by a federal court, against plaintiff in state court proceedings. Perhaps the two cases can be reconciled because in *Weiner* the plaintiffs had a remedy at law in that they could again in federal court move to suppress the evidence, but in *Rea* the plaintiff had no remedy at law because the state (New Mexico) court involved did not have the remedy of suppression and the case was to be tried before *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

In summary, the general rule is that courts of equity will decline jurisdiction in criminal matters except in rare cases, such as *Rea v. United States,* supra, and *Kingsley International Pictures Corp. v. Blanc,* supra, where there exists no adequate remedy at law. In the present case, however, we find that there is an adequate remedy at law in our Rules of Criminal Procedure and therefore it was not necessary for plaintiffs to invoke equity's jurisdiction.

Because plaintiffs were not defendants in a criminal proceeding in Pennsylvania at the time they filed their action in equity, Pa.R.Crim.P. 323 on suppression of evidence was not available to them.[5] An application to suppress under Rule 323 may only be made by a "defend-

---

5. The record demonstrates, however, that it is probable that plaintiffs will be formally charged with various violations of the Crimes Code in Allegheny County. *See* Printed Record at 92a. In that case Pa.R.Crim.P. 323 will offer further relief to plaintiffs.

ant or his attorney." Pa.R.Crim.P. 323(a). However, Pa.R.Crim.P. 324 clearly offers a remedy to non-defendants when they are aggrived by an illegal search and seizure. Rule 324 states:

"(a) A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he is entitled to lawful possession thereof. Such motion shall be filed in the Court of Common Pleas for the judicial district in which the property was seized.

(b) The judge hearing such motion shall receive evidence on any issue of fact necessary to the decision thereon. If the motion is granted, the property shall be restored unless the court determines that such property is contraband, in which case the court may order the property to be forfeited.

(c) A motion to suppress evidence under Rule 323 may be joined with a motion under this Rule.
Adopted Oct. 17, 1973, effective in 60 days:"

We are convinced that plaintiffs as persons aggrieved by a search and seizure could have filed a petition under Rule 324 for the return of their property.

Plaintiffs argue that the Rules of Criminal Procedure are not applicable because no "criminal proceedings," *see* Pa.R.Crim.P. 1(a), or "actions for the enforcement of the Penal Laws," *see* Pa.R.Crim.P. 3(f), have been commenced against them. If we take a restrictive view of "criminal proceedings", plaintiffs would be correct because they have yet to be charged with a crime by complaint, indictment or otherwise. However, we interpret the Rules of Criminal Procedure to apply to all criminal proceedings even though an accused has not been formally charged with a crime by a complaint or an indictment. In *Commonwealth v. Landy*, —— Pa. ——, 362 A. 2d 999 (filed April 22, 1976), defendant was no longer involved in a criminal case because the indictments against

him had been dismissed. Nevertheless pursuant to the Rules of Criminal Procedure, specifically Rule 324, he petitioned for the return of property that had been previously seized from him. Were we to view the rules as only being applicable after a specific action has been commenced against a defendant, the rules on arrest without a warrant, *see* Pa.R.Crim.P. 101, and the rules on search warrants, *see* Pa.R.Crim.P. 2000–2010, would not have to be followed because at the times those rules are relevant no charges have formally been made against an accused. In the present case, search warrants were executed against plaintiffs and various alleged violations of the Crimes Code were listed. We are satisfied that "criminal proceedings" had been commenced and that the Rules of Criminal Procedure were applicable in this case. Therefore, Pa.R.Crim.P. 324 was an available remedy to plaintiffs.

Because the criminal courts of this Commonwealth had the power pursuant to Pa.R.Crim.P. 324 to prevent the use of unlawfully seized evidence against a non-defendant, we hold that the court below did not have the equity jurisdiction to enjoin the actions of the authorities involved.[6] What the Pennsylvania Supreme Court stated in *Meadville Park Theatre Corp. v. Mook,* supra, 337 Pa. at 24, 10 A.2d at 439, also applies here: "It is difficult to conceive of anything more opposed to sound public policy than to permit an accused to obstruct by means of a suit in equity to which *the state itself* is not a party the operation in his case of the machinery of criminal procedure

6. By the same reasoning, we hold that the lower court did not have jurisdiction to entertain relief by declaratory judgment. "Where . . . a statute provides a special form of remedy for a specific type of case, that statutory remedy must be followed." Act of June 18, 1923, P.L. 840, § 6, *as amended,* 12 P.S. § 836. The remedy provided by Pa.R.Crim.P. 324 is clearly akin to a statutory remedy and is not "a general common law remedy, or an equitable remedy, or an extraordinary legal remedy," which does not preclude the obtaining of a declaratory judgment. Act of June 18, 1923, P.L. 840, § 6, *as amended,* 12 P.S. § 836. See Friestad v. Travelers Indem. Co., 452 Pa. 417, 306 A.2d 295 (1973).

which has been constitutionally established to protect the public welfare."

The motion to quash is denied, the decree of the lower court is reversed and the complaint in equity for injunctive relief and for a declaratory judgment is dismissed for lack of jurisdiction.[7]

7. In light of our decision today that the lower court lacked jurisdiction to grant equitable and declaratory relief it is unnecessary to consider appellants' petition for a supersedeas.