## Wida v. Rosini

*Leonard R. Apfelbaum,* for plaintiffs.
*R. Michael Kaar,* for defendant.

ZIEGLER, *P.J., Specially Presiding,* December 11, 1979—In this action plaintiffs, Americus Hose Co., a private nonprofit organization, and Michael

R. Wida, individually and as Americus' President, seek to enjoin enforcement of the gambling and lottery provisions of the Crimes Code[1] by defendant, the District Attorney of Northumberland County.[2] The case has been submitted on briefs and a lengthy stipulation entered into by counsel for both parties.

Americus Hose Company is a volunteer organization located in Sunbury. It has been in existence since 1893 and provides fire-fighting, ambulance and rescue services to the Northumberland County area on a 24 hour basis. In order to raise funds necessary to provide such services, Americus maintains a social hall with bar and grill and various gambling machines and devices for the use of its membership.

It has been stipulated that numerous nonprofit civic, social, religious, fraternal and political organizations in Northumberland County utilize fund-raising techniques and devices proscribed by sections 5512 and 5513 of the Crimes Code. The parties further stipulated that due to the numerous violations, the nature of the organizations committing same and the public service, charitable and other generally laudable purposes for which the proceeds are utilized, prosecution of such violations is pursued only in those cases where com-

---

1. 18 Pa. C.S.A. §§5512, 5513.

2. This case had its origin in the events of January 3, 1979, when members of the Pennsylvania State Police, pursuant to search warrant, entered the Americus Hose Co. building, seized various gambling machines and devices and caused the president of the company to be placed under arrest on charges of violating the gambling and lottery provisions of the Crimes Code.

plaints are made. The instant prosecution resulted from such a complaint. In the absence of a complaint there is no prosecution. While the stipulation entered into by the parties does not state unequivocally that law enforcement personnel were actually aware of specific violations of the gambling statutes (by nonprofit and charitable organizations) and did not prosecute same, it does admit that violations by the aforesaid types of organizations have occurred without prosecution due to lack of complaint. Certain specific violations averred in plaintiffs' complaint were admitted to have occurred by the stipulation and from this we can readily and fairly infer that said violations were known to law enforcement personnel. The Sunbury Community Hospital Street Fair, for example, was held on June 9, 1979, at Cameron Park in Sunbury and was publicized with a full page advertisement in the local newspaper, 'The Daily Item,' on June 6, 1979. Allegations concerning this activity set forth in plaintiffs' complaint were admitted by aforesaid stipulation. The stipulation also states that: "No arrest was made as a result of this fundraising activity simply because no complaint was made about the activity." Prosecutorial awareness of this activity (which is nowhere denied) is made even more evident by the fact that the activity took place in downtown Sunbury in an area adjacent to the courthouse and the city hall. In short, then, we have no difficulty concluding that law enforcement personnel were aware both that violations had been occurring and that certain specific violations had occurred without prosecution due to lack of complaint. Put another way, we believe that the record establishes that violations of which the police and/or district attorney's office were aware went

unprosecuted in the absence of complaint. The stipulation, which admits plaintiffs' averments concerning specific alleged violations, readily points to such a conclusion.

The crux of plaintiffs' argument is that the policy of enforcement outlined above and stipulated by the parties is arbitrary and capricious and violative of the due process and equal protection provisions of the United States and Pennsylvania Constitutions. Plaintiffs assert that prosecution of gambling violations only when complaints are made constitutes unlawful selective and discriminatory enforcement of the law. Said enforcement policy, it is argued, replaces the discretion of law enforcement and prosecutorial personnel with the discretion of the makers of the complaints who may apparently register complaints and thereby initiate prosecutions for any reasons.

"In order to establish an allegation of discriminatory enforcement it is necessary to prove that such enforcement contains an element of intentional or purposeful discriminaton. . . . Proof of mere laxity of enforcement by the authorities is not sufficient to establish an impermissible exercise of discrimination in the enforcement of the law. . . . Common sense dictates that if proof of non-enforcement against others was a valid defense for the violation of criminal statutes then each and every criminal proceeding would be bogged down in a plethora of defense evidence citing others who escaped prosecution under a particular criminal statute. Therefore, in order to establish their claim, [plaintiffs] are required to prove an intentional exercise of discrimination in enforcement by the township authorities and not merely that they were

prosecuted while others escaped the wrath of the law." (Citations omitted.) Kroger Co. v. O'Hara Township, 243 Pa. Superior Ct. 479, 482-83, 366 A. 2d 254, 256 (1976), vacated on other grounds, 481 Pa. 101, 392 A. 2d 266 (1978). "Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, the denial of equal justice is still within the prohibition of the Constitution." Yick Wo v. Hopkins, 118 U.S. 356, 373-74, 6 S.Ct. 1064, 1073 (1886).

Thus the question presented here for our determination is whether the policy of enforcement only upon the basis of complaints constitutes illegal discriminatory enforcement of the gambling laws with respect to activities of nonprofit organizations whose activities are not subject to criminal prosecution in the absence of such complaints.[3]

Several important factors require analysis and balancing in this case. Law enforcement and prosecutorial personnel are obviously burdened with many pressing and more important matters and understandably do not have either the time, resources or personnel to diligently pursue gambling activities carried on by volunteer fire companies and similar organizations at community fairs, bazaars, et cetera—especially when the proceeds derived from such activities are used for charitable

3. It was agreed by stipulation that the district attorney and law enforcement personnel prosecute all violations of the gambling laws by nonprofit organizations where a complaint is filed concerning the activity. Therefore, we do not have before us the question of the validity of a scheme of enforcement wherein some complaints are prosecuted and others ignored or are otherwise not acted upon.

purposes of benefit to the community and to provide vital fire-fighting, ambulance and rescue service. These latter services are most vital in smaller communities which do not, and probably could not afford to, provide these services on a professional basis. The solution which apparently developed in Northumberland County is to ignore the gambling infractions of nonprofit, community-serving organizations. Despite the foregoing, however, the gambling provisions of the Crimes Code do exist and they provide no exemptions for groups such as the Americus Hose Company. Additionally, the district attorney has a duty to prosecute violations of the criminal law. When a complaint is made of violation of the gambling laws, the district attorney cannot so easily remain oblivious to the matter. The complaint triggering the prosecution, however, could conceivably come from any source and for any reason. We know no specifics concerning the complaint registered against plaintiffs in the instant case except that we believe that it is apparent that no screening of complaints takes place and no prosecutorial discretion is exercised once complaints are received.

The most troublesome facet of this case is found in the private or other complaint which serves to trigger prosecution. By adopting such a policy, law enforcement and prosecutorial personnel have abdicated their responsibility, judgment and discretion concerning law enforcement and prosecution to virtually anybody who sees fit to make a complaint for whatever reason. The crucial initial decision of whether to prosecute appears to have been effectively and completely removed from the hands of the police and the district attorney's office and placed in the hands of the general populace. Once the legal process is commenced, there is no indica-

tion of illegal selectivity or discrimination. The problem lies with the procedures whereby the legal proceedings are commenced.

On the facts before us in this particular case we cannot conclude, as noted earlier, that there has been shown to exist any intentional or purposeful discrimination or selectivity in enforcement of the gambling laws once a complaint has been received by the appropriate authorities. The same cannot be so easily said, however, concerning the procedure whereby prosecutions are initiated. The facts in this case have established, and defendant has admitted, that gambling law violations by various nonprofit and charitable organizations occur with some regularity and are essentially ignored by law enforcement and prosecutorial personnel in the absence of complaint even when the authorities are aware of the violations. The problem does not lie here but rather is found in the fact that prosecutions are commenced upon receipt of a complaint—not upon the legitimate exercise of prosecutorial discretion. While this situation does not mean that the police and district attorney actively and directly exercise discriminatory and selective enforcement of the gambling laws against nonprofit and charitable organizations, it does indicate that they have developed and follow a system of prosecution that in essence permits illegal discriminatory and selective enforcement. As noted earlier, the complaints which automatically trigger prosecution could come from any source for virtually any reason. This is not merely proof of laxity of enforcement by the authorities or proof of the exercise of reasonable prosecutorial discretion but it is proof that nothing is done about gambling law violations by certain types of organizations until a

complaint is registered by anybody for any reason. The authorities have thus created a system of application and administration of the law whereby that law is administered with an unequal hand. By adopting this procedure, the authorities have in effect adopted discrimination and selectivity in enforcement—even though the actual discrimination and selectivity is carried out by the maker of the complaint. No basis has been advanced or appears ascertainable for the enforcement policy adopted by the authorities with respect to gambling by charitable and nonprofit organizations. Complaints could be made by anyone for any number of reasons. No official discretion is exercised according to the facts in the present case. We realize that the police and the district attorney's office have much more to do than ferret out bingo games, raffles and the like conducted by charitable and nonprofit groups. If every one of the above type of violations by the above groups were sought out and prosecuted, the authorities would get little else done. The area is clearly one for reasonable prosecutorial and law enforcement discretion. No such discretion exists, however, in the system of enforcement and prosecution as it has been developed in this case. If any discretion or judgment is used, it is used by the makers of the complaint instead of by the authorities who should be exercising same.

We do not believe the fact that a complaint has been made is sufficient to warrant the inference that the violation would automatically warrant prosecution by officials if those officials were in the custom of reviewing violations by charitable and nonprofit groups and initiating prosecutions against those perpetrating the grossest and most obnoxious violations. It would, on the contrary, be

just as easy and reasonable to assume that the complaints were registered (and the prosecutions thereby automatically triggered) for specious reasons such as competitive technique, personal vendetta or the like. Neither conclusion is more inferrable than the other, and the authorities do nothing in the way of screening or investigating prior to initiating prosecution.

Accordingly, we believe that the present case presents a scheme of enforcement violative of the constitutional mandates spelled out in Kroger and Yick Wo.

We emphasize that our ruling here applies only to this particular prosecution and these particular facts. If any other plaintiff were to seek to avail itself of this ruling as precedent in the event of prosecution, it would, of course, be required to establish existence of a pattern of enforcement as plaintiffs herein were required to and did establish. We rule here only on these facts and this particular prosecution. Were we confronted with a different policy of enforcement and administration of the law, the result reached in the instant case might not obtain.

Another question is also presented by this case concerning the propriety of a court of equity acting to enjoin a criminal prosecution. "As the Supreme Court so appropriately stated in Meadville Park Theatre Corp. v. Mook, 337 Pa. 21, 24, 10 A. 2d 437, 439 (1940): 'Only confusion and frustration in the enforcement of [the criminal laws] would result if a person arrested or about to be arrested for their violation could by transforming himself into a complainant and a district attorney into a defendant, in civil proceedings, have his guilt or innocence adjudicated by a court of equity.'" Marcus v. Diulus,

242 Pa. Superior Ct. 151, 158-59, 363 A. 2d 1205, 1209 (1976).

"There have been cases where courts of equity have restrained certain public officers from proceeding to enforce penal statutes but in these cases the complainant relied upon the invalidity of the statute under which proceedings had begun and in addition pleaded with a show of reason that irreparable damages would be done to property by a continuation of those proceedings. In Hygrade Provision Co. v. Sherman, 266 U.S. 497, the United States Supreme Court, in an opinion by Mr. Justice Sutherland, said: 'The general rule is that equity will not interfere to prevent the enforcement of a criminal statute even though unconstitutional. Packard v. Banton, 264 U.S. 140, 143.' In Terrace v. Thompson, 263 U.S. 197, 214, the United States Supreme Court, speaking through Justice Butler, said: 'Equity jurisdiction will be exercised to enjoin the threatened enforcement of a state law which contravenes the Federal Constitution wherever it is essential in order effectually to protect property rights and the rights of persons against injuries otherwise irremediable.' In Cavanaugh et al. v. Looney, Attorney General of Texas, 248 U.S. 453, 456, the Supreme Court of the United States, in an opinion by Mr. Justice McReynolds, said: 'No such injunction [against officers] ought to be granted unless in a case reasonably free from doubt and when necessary to prevent great and irreparable injury.'" Meadville Park Theatre Corp. v. Mook, supra at 24-25. In Marcus v. Diulus, supra, at 159, 363 A. 2d at 1209, it was further stated: "Although normally equity will not interfere in criminal matters, the courts of equity have in certain well-

defined situations exercised their jurisdiction to enjoin criminal proceedings. For example, equity will act to enjoin criminal proceedings when: '(1) The available legal remedy will cause a multiplicity of suits . . . or, (2) The statute or ordinance in question is unconstitutional and void (either per se or as it applies to the party seeking the injunction), *and* its enforcement will cause the plaintiff irreparable loss to his property.' Pa. Soc'y For the Prevention of Cruelty,to Animals v. Bravo Enterprises, Inc., 428 Pa. 350, 356-57, 237 A. 2d 342, 346 (1968). In the present case, however, there is no threat of a multiplicity of suits if plaintiffs are prosecuted; nor is there any allegation that an unconstitutional law is being enforced. Equity has also intervened when property rights have been threatened by criminal proceedings and the plaintiff has no remedy in the criminal courts." (Emphasis in original.)

In the instant suit in equity, plaintiffs have not asserted a challenge to the constitutionality of sections 5512 and 5513 of the Crimes Code. Such a challenge was asserted, however, in pre-trial motions in the criminal case against Americus' President Wida (Com. v. Wida, 12 D. & C. 3d 1 (1979)), further prosecution of which is sought to be enjoined by this action in equity. In an opinion and order handed down on June 20, 1979, Judge Ranck upheld the constitutionality of the gambling provisions of the Crimes Code. Paragraph 37 of plaintiffs' complaint in the instant suit avers that: "Plaintiff non-profit organization has no other adequate remedy at law, since its constitutional challenges against Section 5512 and 5513 of the Pennsylvania Crimes Code have been rejected by the trial court in the criminal action referred to above." Paragraph 38 avers that: "Plaintiffs will

suffer irreparable harm if they continue to be subject to exposure to the sanctions of these statutes." This was admitted by counsel for both parties pursuant to aforementioned stipulation.

Given the facts that plaintiffs do not seek a determination of guilt or innocence in this equitable proceeding, that plaintiffs challenged the constitutionality of the statutes in question in the related criminal proceeding, that a reasonable probability of irreparable harm has been pleaded and accepted by defendant herein and that plaintiffs assert unlawful selectivity and discrimination in the enforcement of gambling laws against the various nonprofit organizations in Northumberland County, we are constrained to conclude that the matter is properly before a court of equity.

### DECREE NISI [1]

Now, December 11, 1979, defendant is enjoined from prosecution of plaintiffs for violations of sections 5512 and 5513 of the Crimes Code in the criminal action filed to No. 79-27 in the Court of Common Pleas of Northumberland County. Costs shall be borne by the County of Northumberland.